PERIOD C. DUFFY, Appellee, *vs.* JANE E. DUFFY, Appellant.

*Opinion filed December 22, 1909—Rehearing denied Feb. 2, 1910.*

1. PARTITION—*parol partition, followed by several possession, will be enforced in equity.* Tenants in common may make a parol partition of their real estate, and, although such partition cannot transfer the legal title, it will be enforced in equity if followed by a several possession in accordance with the partition agreement.

2. WITNESSES—*a party or interested person may testify when called by adverse party.* In a partition proceeding, persons whose interests lie with the sustaining of the bill, their interests being dependent upon the title sought to be established by the complainant, are not disqualified as witnesses when called by defendants, whose interests are adverse to those of the witnesses.

APPEAL from the Circuit Court of Montgomery county; the Hon. T. E. AMES, Judge, presiding.

JETT & KINDER, and GEORGE P. O'BRIEN, for appellant.

LANE & COOPER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee obtained a decree in the circuit court of Montgomery county for the partition of certain real estate, and the defendant Jane E. Duffy has appealed.

Francis Duffy died intestate on April 1, 1881, seized of seventy-six and one-half acres of land in Montgomery county, which was his homestead, twenty acres in Macoupin county and eighty acres in Christian county, and leaving Mary Elizabeth Duffy, his widow, and his children, Francis H. Duffy, Mary C. Duffy and Jane E. Duffy, his only heirs. The family continued to reside upon the homestead for a year after the death of Francis Duffy. They then ceased to occupy it as a residence but the widow continued to rent the premises until her death, after the commencement of this suit. In July, 1891, Mary C. Duffy,

who was then married to a man named Nichols, conveyed to her brother, Francis H. Duffy, all the interest which she had inherited in the real estate of her father and he paid her $600 therefor. His mother also made him a quitclaim deed, with an expressed consideration of $500, of her interest in the eighty acres in Christian county. Thereafter he rented the land in Christian county and received the rent therefor until March, 1900, when he, together with his sister Jane E. Duffy, conveyed it to Peter Nolan for $3700. Francis H. Duffy subsequently married the appellee, Period C. Duffy, and died intestate, leaving no children but leaving appellee, his widow, and his mother and two sisters, his only heirs. His widow then filed a bill for the partition of the land in Montgomery and Macoupin counties, alleging that Francis H. Duffy died seized of the undivided two-thirds thereof, subject to the dower and homestead of his mother. His mother, Mary E. Duffy, died after the suit was begun. The defense made to the bill was, that at the time Mary C. Duffy sold her interest in her father's estate to her brother, he agreed with his mother and sister Jane, the owners of all the interest which he did not own, upon a partition of the lands, whereby he received in fee, unencumbered by his mother's dower, the Christian county land and surrendered to them the Montgomery and Macoupin county lands, and that possession had been taken and ever since held pursuant to the agreement. By amendment to the bill the complainant set up that there was no such agreement in writing and claimed the benefit of the Statute of Frauds, and alleged *laches* on the part of the defendants.

Tenants in common may make a parol partition of their real estate, and, though such partition cannot transfer the legal title, it will be enforced in equity if followed by a several possession in accordance with the agreement of partition. *Tomlin* v. *Hilyard*, 43 Ill. 300; *Nichols* v. *Pad-*

*field,* 77 id. 253; *Shepard* v. *Rinks,* 78 id. 188; *Sontag* v. *Bigelow,* 142 id. 143.

After the death of Francis Duffy his widow, Mary Elizabeth Duffy, remained in possession of the lands in controversy in this suit until her death. After the conveyance by her and her daughter Mary C. Duffy of their interest in the Christian county land to Francis H. Duffy he took sole control of that land and rented it until he sold and conveyed·it to Peter Nolan. His sister Jane E. Duffy joined in the conveyance to Nolan but the purchase price was all received by Francis H. Duffy. Mary C. Duffy, who was again married, this time to a man named Buckendahl, testified that at the time she conveyed her interest in her father's real estate to her brother, her mother conveyed to him her interest in the Christian county land for his interest in the land in Montgomery and Macoupin counties, and that in March, 1900, her sister conveyed her interest in the Christian county land for his interest in the Montgomery and Macoupin county land. This was the time the deed was made to Nolan, and S. H. Stansifer, the notary who took the acknowledgment of that deed, testified that Jennie hesitated about signing it and there was some kind of a dispute, but Frank told her she knew it would be all right or she would be taken care of in the other lands, and the notary finally took the acknowledgment.

When Mary C. Duffy made the deed to Francis H. Duffy, their aunt, Jane Craig, their mother's sister, was present, and also Leroy F. Wood, the notary who took the acknowledgment of the deed. Mrs. Craig testified that at the time Mrs. Duffy conveyed her title to the Christian county land to Frank she obligated herself that Jennie, who was then about ten years old and was present, should convey her title to him and he agreed to convey his title to the other land to them. William Craig, the husband of Jane Craig, testified that Francis told him that he had traded his interest in the Montgomery land for his mother

and sister's interest in the Christian land. Peter Nolan testified that when he bought the Christian county land he asked Frank if he intended to invest in the homestead, and Frank said, no,—that he had no interest in it. Four other witnesses testified to conversations with Francis H. Duffy in which he stated that he had traded his interest in the Montgomery and Macoupin county lands for the land in Christian county and had no interest in the former. Leroy F. Wood, who was present at the time Mary C. Duffy made the deed to Francis H. Duffy, was appointed administrator of his estate and was joined as a complainant in the bill in this case, but he was not called as a witness.

On the part of the complainant, T. A. Gasaway, an attorney at Litchfield, testified that his firm was employed by Francis H. Duffy, shortly before his death, to look after his interest in the Montgomery and Macoupin county land and to get him $2000 for it. When the witness went to see Mrs. Duffy she intimated that she would give $1000, and Jane said she thought he ought to have $1200. They finally agreed to give $1500 to Francis for his interest in the land, and the lawyers had substantially accepted the proposition for him, but before it was consummated he was killed on the railroad. In the first conversation with Mrs. Duffy and Jane neither of them said anything about the land in Christian county, but in a later conversation they said that they owned all the land by reason of some understanding by which Frank had received certain lands in Christian county and was to release his interest in the Montgomery county land, but, notwithstanding that, they were still willing to pay whatever sum they would agree upon for the land. M. M. Creighton, Gasaway's partner, testified that Mrs. Duffy and Jane were in the office to consult Mr. Gasaway and had some conversation about some land that Frank had an interest in, and that he got the general understanding that Frank had some interest and they proposed to pay rather than have a partition suit.

Thomas E. Richards, a real estate dealer, testified to a conversation with Mrs. Duffy from which he understood that Frank had bought his sister's interest in all the land and that Frank owned two-thirds and Jane one-third, and that Mrs. Duffy told him that the Christian county land was sold to pay the mortgage on the Montgomery county land. George Gurick, the father of Period C. Duffy, testified that Mrs. Duffy told him that they had owned land in Christian county and sold it to pay off the mortgages in Montgomery and Macoupin; that Frank had an interest in the Montgomery county land and she wanted him to trade it for the Christian county land, but he would not do it unless he got two shares.

Subsequent to 1891 several mortgages were executed on the Montgomery county land, in which Francis H. Duffy joined. Joseph H. Craig testified that Francis told him that he wanted the Christian county land, and as Jennie was not of age he did not sign over his right to the land until she should become of age but he just held it in trust. It is manifest that whenever Mrs. Duffy wished to borrow money, Francis, having the legal title to two-thirds of the land, joined her in mortgaging it. Jennie, being a minor, though holding title to the other third could not join in the mortgages. The last mortgage was for $1800, and was executed by Jane, who had then just reached her majority, as well as by Francis and their mother. The evidence indicates that this mortgage was paid by Francis out of the proceeds of the sale of the Christian county land.

If the testimony of Mrs. Buckendahl, Mrs. Craig and William Craig is believed, the agreement of partition set up in the answer, and the several possession of the parties in accordance therewith, were proved. The conveyance to Nolan, in which Jane joined, perfected the transfer of the title to the land set apart to Francis. It would be inequitable, in view of his agreement, afterward to permit him or his heirs to share in the land now in question. The

fact that he paid the $1800 mortgage on the land may have created a debt but gave him no interest in the land. The statements made by his mother and sister in regard to his interest in the land when called upon by his attorneys may well have been made with reference to this payment, and the apparent inconsistency of such statements with the claim now made by Jane E. Duffy may be thus explained.

The circuit court sustained objections to the testimony of Mrs. Buckendahl, Mrs. Craig and William Craig and entered a decree as prayed in the bill. Without their testimony this decree was right, and it is therefore necessary to determine the correctness of the ruling of the court excluding it. The ruling is sought to be sustained on the ground that the witnesses were interested in the event of the suit. Mrs. Buckendahl was interested as an heir of Francis H. Duffy and a devisee of her mother, Mary E. Duffy, who was also an heir of Francis H. Duffy, and devised all her estate to her daughters, Mary C. Buckendahl and Jane E. Duffy. She had no interest in the fee of the real estate in question except such as she inherited from her son. Mrs. Buckendahl's interest was therefore not adverse to that of Period C. Duffy but was identical with it. If the bill was sustained Mrs. Buckendahl would receive one-sixth of the land, otherwise nothing. William Craig's interest, if any, was only as administrator of the estate of Mary E. Duffy, and as such was identical with that of the complainant. If the bill was sustained Mrs. Duffy's estate would be entitled to one-sixth of the land by inheritance from Francis H. Duffy, but if it failed her estate would receive nothing. Jane Craig was held incompetent as a witness because of the supposed incompetency of her husband, William Craig. It is only when called to testify in his own interest that a party or interested person is disqualified as a witness. He is competent when called by the party opposed to him in interest. (*Pyle* v. *Pyle*, 158 Ill. 289; *McKay* v. *Riley*, 135 id. 586.) All these

witnesses were competent, and when their testimony is considered in connection with the other evidence in the record the decree of the circuit court cannot be sustained. It will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*