CAROLINE ENDERS, Plaintiff in Error, *vs.* CLARA MUNO *et al.* Defendants in Error.

*Opinion filed October 27, 1915.*

1. DEEDS—*when delivery of a deed is not shown.* Where the only two witnesses competent to testify as to the delivery of a deed contradict each other, but the witness testifying to facts showing delivery is the son of the complainant, who is seeking to establish the delivery, whereas the witness testifying to the facts showing non-delivery is disinterested and is not shown to be less worthy of credit than the other witness, a delivery is not established.

2. SAME—*when finding that grantor was competent to make the deed will be upheld.* A finding by the chancellor that the grantor was competent to make the deed in question will be sustained by a court of review where the preponderance of both expert and non-expert testimony is in accordance with such finding, when all the evidence in the case, together with the opportunities of the witnesses for observation and their bias or lack of bias, is considered.

3. WITNESSES—*when co-defendant is competent to testify.* On a bill to set aside a deed, filed by the complainant against her brother and sister, if the interest of the sister is identical with that of the complainant she is a competent witness when called as a witness by her co-defendant.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

OTTO F. REICH, (I. T. GREENACRE, of counsel,) for plaintiff in error.

VINCENT D. WYMAN, CHARLES E. CARPENTER, and. OTTO W. JURGENS, for defendant in error Wm. Schiestel.

Mr. JUSTICE DUNN delivered the opinion of the court:

Caroline Enders filed two bills on the same day against William Schiestel, one of which sought an accounting for two notes amounting to $2400, one secured by a mortgage on land in Michigan, the other by a mortgage on land in Cook county, Illinois, and for the profits from the use of 40 acres of land on Lincoln and Devon avenues, in the city of Chicago. The second bill sought to set aside a warranty deed from Joseph Schiestel to William Schiestel, dated January 24, 1912, and for partition of the premises. Clara Muno was also made a defendant to both bills, and Amatha Schiestel (William Schiestel's wife) was joined as a defendant in the second bill. Answers were filed, the causes were referred to a master and consolidated, were heard upon the master's report and exceptions thereto, and a decree was rendered dismissing the bills, to reverse which the complainant has sued out this writ of error.

Clara Muno, Caroline Enders and William Schiestel were the only children of Joseph Schiestel, who died March 31, 1912. In his lifetime he owned two tracts of land in the city of Chicago,—one of 29½ acres, the other (which was his homestead) of 30.55 acres,—and two vacant lots. He had inherited the homestead from his father and cultivated it as a truck farm, together with the 29½ acres. William lived with his father on the land and gave his whole time to helping cultivate it until he was thirty-five years old, without compensation, except that during the last seven years of that time he had all the income of the 29½ acres for the taxes. Five or six years before his father's death William married, and after that event he lived upon and cul-

tivated the land, paid the taxes and received the income by agreement with his father, who lived with him and worked on the place as he had formerly done, receiving for his work nothing but his board and lodging. Besides the land Joseph owned about $23,000 in notes, mostly secured by mortgages. In the latter part of July, 1911, Joseph suffered a slight paralytic stroke and was soon afterward removed to the home of his daughter Caroline Enders, who was a practical nurse, where he gradually improved. He had a serious illness in September, from which he had practically recovered when in the latter part of November he suffered a second paralytic stroke, after which he was confined to his bed or to a reclining chair until his death. Believing that he would not recover and desiring to dispose of his property in his lifetime and to save the expense of administration upon his estate he sent for Henry P. Kransz, who had for a long time attended to his investments, to attend to this matter also. Kransz came on December 19 to Mrs. Enders' home, and a deed was then signed and acknowledged by Joseph Schiestel in the presence of Mr. and Mrs. Enders, their son, Joseph, who signed the deed as a witness, Kransz and William Schiestel, conveying all the real estate of Joseph Schiestel to all three of his children, equally. When the deed was presented to Joseph Schiestel, Kransz said to him that it was a deed of all the property, jointly, and the children might make a settlement among themselves, if that was his intention. Joseph answered that it was not exactly what he wanted, but if Kransz thought that was best, let it go. He then signed the deed by his mark, acknowledged it and handed it to William, telling him to put it with Joseph's papers. This is according to the testimony of Kransz. Joseph Enders, on the other hand, testified that his grandfather expressed no dissatisfaction with the deed but simply signed it and gave it to William. At the same time the two mortgages and notes in controversy were assigned and delivered to William, for the reason that he and his father were jointly interested in them

and the father had received his share. This disposition of his property was not satisfactory to Joseph, who had intended for many years that upon his death his son should have the homestead, which had been in the family for sixty years, and about a month later he again sent for Kransz, who came on January 24, 1912, in response to his request. Joseph told Kransz that the deed he had signed was not what he wanted; that he wanted it divided; that he did not want the children to have any trouble when he was gone or any argument about it. He rejected the suggestion of a will, saying that he did not like lawyers and courts and did not think he needed a will. The deed was thereupon torn up and two deeds were then executed, the one to William being the deed in controversy here, for the homestead, and the other to the daughters, Mrs. Enders and Mrs. Muno, for the rest of the real estate. The same persons were present as on the occasion of the signing of the former deed. Joseph Enders and Kransz signed the deeds, which were executed by mark, as witnesses. William's deed was delivered to him and the other to Mrs. Enders. Joseph had sold 10½ acres off the 40-acre tract of which the 29½ acres had been a part, to the Sanitary District of Chicago for $10,000, and he stated that he wanted William to have the homestead and his daughters to have the other farm off which he had sold the 10 acres, and the money that he got from the sanitary district he wanted them to have instead of the 10 acres. All of his estate except $9000, which the daughters were to have, he wanted divided equally among the children of their own will, and he hoped that they would not get into any controversy about it or any lawsuit. To make up the remainder of the $10,000 William was to give his note for $1000, payable equally to his two sisters after his father's death. Accordingly William gave his note for $1000, and it was paid, after his father's death, to Mrs. Enders and Mrs. Muno. At the same time that he made this disposition of his property Joseph made a settlement with Mrs.

Enders for his board and nursing, paid her and took a receipt for such payment. The deed to William was recorded on March 28, 1912, three days before the grantor's death, and that to Mrs. Enders and Mrs. Muno a few days after his death, at the instance of Mrs. Muno. Mrs. Enders was appointed administratrix of the estate, which she has settled.

The plaintiff in error contends that the evidence shows that Joseph Schiestel never recovered from the stroke of paralysis which he suffered in July, 1911, and that he was mentally incompetent to execute a deed on December 19, 1911, and on January 24, 1912, but that if he was competent on December 19, the deed made then effectually disposed of his real estate and left nothing which he could convey on January 24. Whether he was competent on December 19 is only material as bearing on the question of his competency on January 24, for the deed of December 19 is not shown to have been delivered. The testimony of the only two competent witnesses present when it was signed does not agree. Kransz, who wrote it, testified that the grantor, while expressing dissatisfaction with it, signed it and handed it to his son, one of the grantees, and told him to put it with the grantor's papers. While this is not conclusive that it was not delivered, it tends to prove that the grantor retained control of the instrument and did not intend that it should then take effect as a present conveyance. Joseph Enders, on the other hand, testified that after the deed was signed Kransz said to the grantor that he had better give it to someone, and suggested William Schiestel, and William took the deed and Kransz said he would have it recorded. This tends to prove a delivery of the deed, but no delivery was shown, for if what one witness testified took place there was a delivery, while if what the other testified took place there was none. If the witnesses were entitled to equal credit a delivery was not shown, but it is not to be overlooked that Kransz has no interest of any kind in the suit, while Enders is the son

of the plaintiff in error, desirous of having her win her suit and doing all he can to assist her.

In regard to the mental condition of Joseph Schiestel on January 24, 1912, there is the conflict in the evidence usually found in cases of this kind. Aside from the medical witnesses, the principal testimony to facts showing unsoundness of mind comes from the son, two daughters and two sons-in-law of the plaintiff in error, the chief of whom is Joseph Enders, the son, who was at his mother's house during all the time his grandfather was there previous to his death. His testimony is very full and emphatic but is in parts exaggerated, contradictory and inconsistent with itself and the other evidence in the case. While the opportunities of these witnesses for observing the actions of Joseph Schiestel and forming conclusions as to his mental condition were favorable, their bias and natural interest in the case of the plaintiff in error tend to make their testimony less convincing than that of witnesses not affected by such bias and interest. The three or four other witnesses who expressed an opinion unfavorable to the mental capacity of Schiestel testified to occasions of weakness or confusion which indicated physical and mental weakness but not necessarily want of understanding. After the stroke of paralysis he had some difficulty in speaking. He had a habit of talking to himself and did not talk much to other people. He was hard of hearing and his eyesight was bad, and these circumstances explain his inability, in many instances, to recognize people, to understand what was said to him and to carry on conversation. A dozen or more witnesses, most of whom were old acquaintances, testified to visiting and talking with him, describe his apparent mental and physical condition, give his conversation, and state their opinion that he was of sound mind and capable of transacting business. Mrs. Muno, his daughter, was with him the day before the deeds were executed, together with Mrs. Enders and William. Her father had sent for her because he said he wanted to

get things straightened up. He told them what disposition he proposed to make of his property and asked them if they were satisfied. Mrs. Muno and Lorenz Schiestel (Joseph's brother, who was also present,) testified that he was of sound mind and his mind was clear. Henry P. Kransz, who wrote the deeds and was present with Mrs. Enders and William the next day, testified that he was of sound mind. The great preponderance of the non-expert testimony was in favor of Schiestel's soundness of mind. So also was the preponderance of the medical testimony. The attending physician testified strongly that Schiestel was not competent to transact business after his second stroke of paralysis, but the inconsistencies in his testimony deprive it of a great deal of its weight. Three other physicians who had no acquaintance with Schiestel and had never seen him, testified as experts, and, though there was disagreement in their testimony, when their answers to hypothetical questions are considered in connection with the facts shown by the evidence, they sustain the theory that the paralysis was not such as necessarily affected the soundness of mind of the sufferer and that his mental condition was not inconsistent with a capacity for the transaction of business.

William Schiestel had devoted many years of his life to his father's service; his sisters had married and left home early in life, many years before their father's death; his father had long cherished the intention of leaving the homestead to his only son, and the disposition made of his property was upon an equitable plan which accorded with his sense of fairnesss to his children. The evidence would not justify a court in setting the deed aside.

Objection is made to the competency of Mrs. Muno as a witness. She was made a defendant to the bill with her brother, William, and was called as a witness by him. Her interest was identical with that of Mrs. Enders, and she was therefore competent when called by the adverse party. *Duffy* v. *Duffy,* 243 Ill. 476.          *Decree affirmed.*