(No. 14681.—Decree affirmed.)

Harriet M. Teter *et al.* Appellants, *vs.* Jennie F. Spooner *et al.* Appellees.

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. Wills—*when presumption of undue influence arises.* A fiduciary relation, alone, does not raise any presumption of undue influence, but that presumption arises only from the fact that the dominant party was directly connected with the making of the will.

2. Same—*presumption of undue influence may be rebutted by circumstances in evidence.* Where a fiduciary relation exists between the testator and his attorney, who drew the will and called in the witnesses to its execution, the burden rests upon the proponents in a contest case to show that the instrument is the free expression of the will of the testator, but the question is one of fact to be determined by the circumstances appearing in evidence.

3. Same—*what does not increase burden of rebutting undue influence.* Where there is nothing unusual in the circumstances surrounding the preparation or execution of a will, which is long and complicated and naturally required the services of a lawyer in its preparation, the fact that it was dictated to a stenographer in the testator's absence, after it had been prepared at interviews with the testator, does not add anything to the burden of proof resting upon the proponents, even though there was a fiduciary relation between the testator and the lawyer.

4. Same—*due execution of a will is presumptive evidence that testator knew its contents.* The execution of a will by a testator in his right mind, where no circumstances of fraud or imposition appear, is presumptive evidence that he knew its contents.

5. Same—*purpose of admitting statements of testator in a will contest.* In a will contest case, where undue influence and mental incapacity are charged, statements of the testator are admissible to show the condition of his mind, but alleged statements by him that his son had offered the testator's attorney a large sum of money to use his influence to get the will changed are not admissible to prove the fact of the offer or that the attorney had informed the testator thereof, but the burden of proving the charge that the attorney made such representations to the testator to prejudice him against his son rests upon the contestants and must be proved otherwise than by the statements of the testator.

6. Same—*the contestants must prove charge of fraud or insane delusion.* Until the contestants in a will contest case introduce evi-

dence to sustain their charge of fraud or insane delusion the proponents are not required to produce evidence to controvert it.

7. SAME—*when adverse party may be called as witness in will contest.* In a will contest case the attorney who drew the will and is interested in sustaining it because he was made a trustee with large powers is not competent as a witness for the proponents, but the contestants have a right to use him as a witness in their behalf.

8. SAME—*when instruction as to undue influence is improper in a will contest.* In a will contest case, an instruction stating that "where there is no evidence of actual undue influence, the jury in considering the question of undue influence should take into account all the facts as disclosed by the evidence," and which then proceeds to enumerate the facts to be considered by the jury, is erroneous in usurping the province of the jury although there is no direct testimony of undue influence in the case.

9. INSTRUCTIONS—*when an instruction attempting to define preponderance of evidence is confusing.* In civil cases all that is required of the party having the burden of proof is to prove the issue by a preponderance of the evidence, and an instruction which imposes a greater burden, such as to convince the jury, to satisfy the jury or prove to the satisfaction of the jury, and uses the adjectives "slight," "clear" or "perceptible" with reference to the preponderance of the evidence, is confusing to the jury and should not be given.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

FREDERICK A. BANGS, and JUDAH, WILLARD, WOLF & REICHMANN, (M. J. MITCHELL, and J. R. FILES, of counsel,) for appellants.

GIDEON S. THOMPSON, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The heirs of William H. Godair, who died October 13, 1914, filed a bill in the circuit court of Cook county to contest his will dated October 26, 1911, and a codicil dated January 3, 1913, on the ground of lack of mental capacity and of undue influence exerted by his wife, Harriet A. Go-

dair, Daniel R. Spooner and Adolph L. Benner. A trial resulted in a verdict sustaining the will and a decree was rendered dismissing the bill, which was reversed. (*Teter* v. *Spooner,* 279 Ill. 39.) After the cause was re-instated in the circuit court an amended and supplemental bill was filed. Besides alleging the mental unsoundness of the testator this bill alleged that the execution of the will and codicil was obtained by the undue influence of Harriet A. Godair, his wife, Daniel R. Spooner, his private secretary, and Adolph L. Benner, his attorney, and that Benner represented to the testator that Arthur G. Godair, his son, had offered Benner $50,000 if he would induce the testator to execute a will devising his money and property to Arthur, and advised the testator not to leave any of the estate to Arthur but to leave it all to Benner in trust, and that the representations made by Benner were false. In their answer the defendants neither admitted nor denied the making of the representations alleged in the amended and supplemental bill but demanded strict proof of the allegations. Upon exceptions taken the defendants were required to make further answer, and thereupon did answer denying that Benner made the statements alleged to the testator. The amended and supplemental bill also charged that when the will and codicil were executed the testator was possessed of an insane delusion that his son, Arthur, and E. E. Balridge, were attempting and had attempted to procure his estate by unlawful means,—that is to say, the testator was possessed of the belief and delusion that his son had offered certain attorneys a large sum of money to induce the testator to draw a will in his son's favor, and that Balridge was co-operating with the son, and the testator was possessed of the belief that he had been told by those in whom he had great confidence that his son and Balridge were attempting to influence the testator to procure an execution of a will to devise his property to them, all of which beliefs were mere delusions, unfounded in fact, but persisted in in spite of numer-

ous efforts to convince him of their untruth, and caused the
testator to lose his love and affection for his son and all his
relatives, and he formed a belief that he had no living rela-
tives, and this belief he also persisted in.   There was an-
other jury trial, which again resulted in a verdict sustaining
the will and a decree dismissing the bill, from which the
complainants have appealed.

The evidence on the question of unsoundness of mind
was similar to that on the first trial.   There is no occasion
to discuss it at length.   Its character is sufficiently indicated
in the opinion on the former appeal.   The preponderance
was overwhelmingly in favor of the proponents.   A verdict
for the contestants could not have been sustained on a mo-
tion for a new trial.

The former decree was reversed for an error in the ad-
mission of evidence and for the giving of an instruction
on the question of undue influence at the request of the
proponents, to the effect that Adolph L. Benner was not to
be regarded as taking beneficially under the will, because the
will simply imposed upon him the duty of a trustee, for
which he was entitled to reasonable compensation from the
estate.   The opinion stated that there was no direct evi-
dence in the record that Benner improperly influenced the
testator in drafting the will, or to show that Benner was
the dominating factor with the testator as to anything ex-
cept legal questions.   The sole ground for any claim of im-
proper influence was the fact that he drafted the will and
that large powers were given to him as one of the trustees.
It was therefore held that the instruction was improperly
given.   In the present record, as in the former, there is no
direct proof of any attempt by Benner to exercise any un-
due influence to procure the execution of the will, or that
his was the dominating mind in any respect except the legal
means of carrying out the intention of the testator.   Some
facts should be stated which do not appear in the report of
the former appeal.

The testator had only one living child, his son, Arthur, and the will recites that in the year 1910 he had given to this son real estate, securities, stocks and notes specifically enumerated, amounting to $242,350, which the testator regarded as a liberal provision for his son. On July 6, 1910, the testator executed a will in which he provided a fund of $200,000 for the establishment and maintenance of a hospital, to be known as Godair Memorial Hospital, at or near Roswell, New Mexico. He directed that Arthur should be its president, and that he and E. A. Cahoon, J. F. Hinkle, John W. Poe and A. H. Pruitt should constitute its directors and trustees. The residue of the estate was given to Harriet A. Godair, his wife, and Arthur, with the provision that should his wife not survive, her share should be divided between Arthur and the hospital. In this will it is stated that the foundation of the hospital was in recognition of the fact that the testator had accumulated most of his fortune in New Mexico and of the hearty gratitude and kindness that he had received from his many friends there, and it was stated that the hospital should be a place where the sick and poor should be treated and cared for without pay. Arthur G. Godair, D. R. Spooner and A. P. Starr were named as executors without bond, and it was provided that Starr should receive compensation, but that Arthur and Spooner having already been provided for, should act without compensation. There was a bequest of $5000 to Spooner. Benner was named as successor as executor and trustee. It was provided that he should be the attorney for the estate and in the incorporation of the hospital, and that the trustees should confer with Cahoon in regard to the investment of the funds, which it was directed should be made in notes secured by mortgages on property in or near Roswell. As to Arthur it was stated: "I have amply provided in my lifetime for my son, Arthur G. Godair, and believe and feel that the provision herein made for him in one-half of the remainder of the estate as herein

given to him is ample and sufficient, and feel that he is sat-
isfied with the provision herein made for him."

On May 29, 1911, Godair executed a second will, in
which he declared his purpose to found or erect at or near
Chicago, in his lifetime, an old people's home, to be called
Godair Memorial Old People's Home, where people who are
old and unable to make a living may have a home with-
out pay. It was provided that the home should be non-
sectarian; that Arthur G. Godair should be president, and
Arthur, A. L. Benner and D. R. Spooner should be trus-
tees and directors. These three were named as executors
and trustees under the will without bond, and Arthur and
Spooner were to serve without compensation. A bequest of
$5000 was also made to Spooner in this will. The will
gave one-third of the residue of the estate to the testator's
wife, one-half to the home and one-sixth in trust, the in-
come to be paid to his wife and upon her death the fund
to be paid to the home. As to Arthur, it was recited that
the testator in the year 1910 had made a gift to his only
son, Arthur, of securities, stocks and notes amounting to
over $200,000, and he felt that this gift was ample and
that the son should not be given any additional sum out of
the testator's estate, and that it was the testator's belief that
his son was satisfied that he had been liberally dealt with,
and that the testator trusted he would carefully carry out
every provision of his will as executor and trustee.

After making the second will the testator went to Europe
and upon his return executed the will now in controversy,
on October 26, 1911, wherein he stated, after reciting that
in 1910 he had given his son property worth $242,350: "I
have undergone the unpleasant experience of learning that
my said son is not in full accord with my object of form-
ing and endowing an old people's home, and therefore I am
convinced that it is to the best interest of the estate and the
said home that he be not appointed as one of the executors
or trustee of my estate nor as an officer of the said Godair

Memorial Old People's Home or a trustee of the endowment fund thereof." The will provided for the location of the home in Cook county, that it should be non-sectarian, should be an abode where old people who are poor and unable to make a living should have a home, and that the corporation should not be one for profit. Benner was named as president, William T. Bruckner as vice-president, and Spooner as secretary-treasurer, and they were named as trustees and directors. There were some minor legacies, among them, one of a diamond stud, diamond ring, cuff buttons, gold watches and chains and fobs to Arthur, one of $5000 to Spooner, and the residue of the estate was given to Spooner and Benner in trust, to convert it into cash; to set aside $22,000, the income from which was to be paid to Spooner while he acts as trustee; $60,000, the income from which was to be paid to the widow for life; and to pay one-third of the residue to the widow and two-thirds to the corporation organized or to be organized, which was also to receive the remainder of the $22,000 and $60,000 funds. It was provided that Spooner should serve without other compensation than the provision made for him in the will and that Benner should receive reasonable compensation.

The codicil to the will was executed January 3, 1913. It provided that the home might be located anywhere in the State of Illinois. The gift of the stud, ring and cuff buttons to Arthur was canceled, those articles were given to the widow, and the will of October 26, 1911, was in all other respects confirmed.

Arthur G. Godair died as the result of an accident in March, 1913. The contestants are the nephews and nieces of the testator and are his only heirs, except Harriet A. Godair, his widow, and the defendant Ella Janson, who is also a niece.

No evidence was introduced to sustain any of the charges against the widow of undue influence. No evi-

dence was introduced to sustain the charge against Spooner of undue influence. Reliance is placed only on his supposed fiduciary relation to the testator. The fiduciary relation, however, does not raise any presumption of undue influence. (*Blackhurst* v. *James,* 293 Ill. 11.) That presumption arises only from the fact that the fiduciary was directly connected with the making of the will. (*In re Will of Barry,* 219 Ill. 391.) There is no evidence that Spooner had anything to do with the preparation or execution of the will. The appellants rely as proof of undue influence exercised by Benner upon the statement in the testator's will in regard to the testator's unpleasant experience in learning that his son was not in full accord with the purpose of his will, the large powers given by the will to Benner, the increase in the extent of these powers in the successive wills, showing Benner's constantly increasing influence, and the testimony of various persons to statements of the testator that Arthur had offered Benner $50,000 to have the will changed so that the money would not go to the old people's home but would go to Arthur. The will and the codicil were drawn by Benner and he called in the witnesses to its execution. He had been Godair's attorney for twenty years, and it is claimed that these facts establish a confidential relation between Benner and the testator which imposes upon the proponents the burden of showing that the will was not procured by the undue influence of Benner. The burden does rest upon the proponents of showing that the instrument is the free expression of the wish of the testator, and the question is one of fact, to be determined by the circumstances appearing in evidence.

The evidence shows that Benner had been Godair's attorney for twenty years and that he dictated the will to a stenographer in Godair's absence. It is not shown that Godair read the will. He executed it with the requisite formalities in Benner's office in the presence of witnesses who were called in. There were no circumstances in the prepa-

ration or execution of the will not to be expected in the natural and usual course of such occurrences. The will is a rather long and somewhat complicated instrument, which naturally required the services of a lawyer in its preparation, and an interview, or perhaps several interviews, between the testator and the lawyer before it could be reduced to writing. These interviews would naturally be private, and naturally, also, when the lawyer was thoroughly advised of the client's desires and the plan of the will had been sufficiently elaborated, the presence of the client at its dictation would not be necessary or expected. Its execution would occur in the lawyer's office and the witnesses would be such persons as happened to be present or conveniently within call. The execution of a will by a testator in his right mind, where no circumstances of fraud or imposition appear, is presumptive evidence that he knew its contents. (*Compher* v. *Browning,* 219 Ill. 429.) There is nothing in the circumstances of the preparation or execution of the will which adds anything to the presumption casting the burden of proof as to the freedom of will of the testator upon the proponents.

There is no evidence of the statements charged in the bill to have been made by Benner to the testator in regard to Arthur's offer of money to have the former will changed. The recital in the will shows that the testator at the time of its execution was of the impression that Arthur was not in accord with his purpose of endowing an old people's home but not that he had received information on that subject from Benner. It is equally probable that the testator had learned from other sources, or from his son himself, that the son did not approve of his father's purpose. The testimony of the witnesses to statements of the testator that his son had offered Benner $50,000 to have the will changed or to get rid of the will, or similar statements, was no evidence of the fact that Benner had made any such statements or given any such information

to the testator, or that such statements, if made, were not true. Those statements were competent to show the condition of the testator's mind but were not competent to prove the facts stated. (*Wilkinson* v. *Service,* 249 Ill. 146; *Reynolds* v. *Adams,* 90 id. 134.) The bill charged that certain representations were made by Benner. The burden of proving this charge was upon the contestants, and it is not proved by statements of the testator that Benner had made those representations.

The large powers given in the wills which the testator had previously executed, and the fact that in each will such powers were enlarged, do not tend to show that any influence was exercised by Benner in procuring the testator to make the will in controversy. The evidence does not show that Benner had anything to do with the execution of those wills. The testator himself gave the reason in his first will for providing for the location of a hospital in New Mexico, where he had laid the foundation of his fortune, and to various witnesses he also talked of his plan to establish an old people's home, giving as his principal reason that his mother had been compelled to go through life poor. There is no direct evidence of influence exercised by Benner at any time. There is no presumption as to the exercise of influence in the making of the will in 1910 or the first will in 1911, for it is not shown that Benner had anything to do with the preparation or execution of either of those wills. The will of 1910 and the first will of 1911 were admitted in evidence and their tendency is to show that the general plan of creating an endowment for the relief of people who were poor existed in the testator's mind from the time of making the first will. At the time the will in controversy was executed the testator's son was his only prospective heir. The contestants were the children of his half-brother, who lived in Gowrie, Iowa. The testator had gone from there to Chicago many years before his will was made, and his relations with them had not since then been close or in-

timate. Whether they were or were not, under the circumstances, the natural objects of his bounty, there is no evidence that he regarded them with any particular affection but rather the contrary. His son was closer to him, and if his son's opposition to his purpose of founding an old people's home caused the testator to determine not to make any provision for him in his will, there is no reason to suppose that he would, upon reaching such determination, regard his more distant relatives as the natural objects of his bounty and make provision for them which he would not have made but for his dissatisfaction with his son. From a consideration of the character of the benefit which Benner took under the will, the mental and physical condition of the testator, his abiding purpose to devote a large part of his fortune to the particular form of charity provided for in this will, and his confidence in Spooner and Benner because of his long association with them, the jury were justified in finding, from the preponderance of the evidence, that the will was not shown to have been the result of the influence of Benner by reason of his confidential relation to the testator but was a free expression of the testator's own desire and will. Even if there was evidence that Benner made the statement in regard to the effort of Arthur to induce him to have the testator change his will, there is no evidence that such statement was not true and that Arthur had not made the offer alleged.

It is insisted that if Benner had not made these statements to the testator and Arthur had not made the offer to Benner the testator was under an insane delusion on that subject. There was no proof on these questions. It was just as necessary, in order to establish the insane delusion, to show the fact as to whether Benner had or had not made the statements to the testator alleged in the bill and the fact as to whether or not Arthur had or had not made the offer to Benner, as it was on the question of undue influence. The burden was on the complainants and they in-

troduced no evidence, relying only upon the inference to be drawn from the testator's statements, which, as we have said, were not evidence of the facts. Until evidence was introduced to sustain the claim of fraud or insane delusion the appellees were not required to produce evidence to controvert it. In this connection it is worthy of note that the appellants had a right to use Benner as a witness in their behalf since his interest was adverse to theirs, though he was not a competent witness for the appellees. *Duffy* v. *Duffy,* 243 Ill. 476.

The appellants criticise many of the instructions given. The fourth and sixth instructions were as follows:

4. "The law presumes, and it is the duty of the jury to presume, that every man who has arrived at years of discretion is of sound mind and memory, capable of disposing of his property by will or otherwise, until the contrary is shown; and it is your duty to hold that at the time of the execution of the instruments offered in evidence, the testator, William H. Godair, was of sound mind and memory, and to so hold until you believe from a clear preponderance or greater weight of all the evidence that he was otherwise."

6. "Every person is presumed to be of sound mind and memory until the contrary is shown, and the burden of proof rests upon the party alleging insanity or unsoundness of mind, and if the jury finds from the evidence and under the instructions of the court, that the contestants in this case have not proven by a clear preponderance of the evidence that the said William H. Godair, at the date of the execution of said will and codicil thereto was not of sound mind and memory; and if the jury further finds from the evidence and under the instructions of the court, that the contestants in this cause have not proven by a preponderance of the evidence that the said William H. Godair executed the said will and codicil by reason of undue influence or constraint upon the part of some of the beneficiaries of said will and codicil, or some person in their be-

305—14

half, or if the jury believes that the evidence on either of these questions or both of these questions is equally balanced, then the jury is instructed to find the issue for the proponents and against the contestants."

The objection is made, which is common to both of them, that they required the contestants to prove that the testator was not of sound mind and memory by a clear preponderance of the evidence. In civil cases the burden of proof which rests upon the party holding the affirmative of the issue is to prove the issue by a preponderance of the evidence, and it is error to give an instruction to the jury which imposes a greater burden, such as to convince the jury, or to satisfy the jury, or prove to the satisfaction of the jury. All that is required of the party having the burden of proof is to prove the issue by a preponderance of the evidence. In the discussion of the evidence in cases of contests of wills the court has sometimes used the expression that the evidence of incapacity must clearly preponderate to authorize the setting aside of a will. This statement has been made in connection with the discussion of an instruction in regard to the burden of proof and the effect of the presumption of sanity on the quantum of evidence required to show unsoundness of mind. The court has not held in any case that it was proper to instruct the jury that the contestant in a will case must prove the insanity of the testator by a clear preponderance of the evidence. In the case of *Norton* v. *Clark,* 253 Ill. 557, where the court gave the jury the instruction which has been frequently given in actions for negligence, that if the evidence preponderated in favor of the plaintiff, although but slightly, that was sufficient, it was held error to give the instruction because the law presumes every person to be of sound mind, and when a will has been executed with the formalities required by law it has always been held that the evidence of incapacity must clearly preponderate to authorize the setting aside of

the will. The argument is based upon the hypothesis that proof has been made that the will has been executed with the formalities required by law and that the law presumes every person to be of sound mind. The instructions in question contained no reference to the *prima facie* case made by proof of the execution of the will with the formalities required by law. The use of the adjectives "slight" and "clear," with reference to the preponderance of the evidence required to sustain an issue, is only confusing to the jury. They ought not to be used in instructions in any case. Nobody knows what is a slight preponderance or what is a clear preponderance of the evidence, although everyone knows what is meant by a preponderance of the evidence. A preponderance of the evidence is necessarily clear even though it is slight. If there is a perceptible preponderance of the evidence it is sufficient, but it would not be proper for the court to give an instruction to the jury that a perceptible preponderance of the evidence was sufficient, any more than that a clear preponderance of the evidence was required. The effect of the adjectives is merely to confuse the jury and invite them to minimize or maximize the weight of the evidence on one side or the other. Such instructions ought not to be given. The error in this case was unimportant, because the verdict on the issue of testator's soundness of mind could not have been other than it was on the evidence.

It is objected that the last clause of instruction 6, "if the jury believes that the evidence on either of these questions or both of these questions is equally balanced, then the jury is instructed to find the issue for the proponents and against the contestants," is meaningless and confusing and unintelligible in connection with the rest of the charge. The criticism seems to be a just one, but in view of the evidence in the record the judgment should not be reversed because of the error.

Instruction 10 is as follows:

"If you believe from the evidence that prior to the execution of the will and codicil in evidence, the testator, William H. Godair, executed other wills, in which provision was made for devoting a substantial portion of testator's estate to charity, and if you further believe that on several occasions prior to the execution of said will and codicil testator had expressed to different persons a purpose to found a home for old people, or that he had expressed a purpose to devote any part of his estate to charitable purposes, in arriving at your verdict, you have a right to consider such acts and expressions on the part of the testator as evidence upon the issue of undue influence, together with all of the other facts and circumstances in evidence procuring the execution of the will and codicil in evidence."

The objection made is that it is too wide and general in its terms and permits the jury too much latitude in consideration of the elements involved in the instruction; that the provisions of the former wills must have approximated the provisions of the last will and must have been executed free from undue influence, and the expressions of the testator must have been equally free from such influence, and he must have been of sound mind when he made the previous wills or gave expression to his testamentary dispositions before such wills or expressions are admissible for the purpose stated in the instruction. The wills were admitted in evidence without objection. The evidence shows the testator to have been of sound mind at the time of their execution, and there is no evidence of any undue influence at those times or that Benner prepared either of the wills.

Instruction 15 informed the jury as to the degree of mental capacity which was sufficient to enable the testator to make a will, and directed that if the testator possessed such degree of capacity the verdict should be in favor of the will, unless the jury believed from the evidence that testator "was under such undue influence that he was con-

strained or induced, through the restraint, coercion or improper conduct of others, to act in a manner he would not otherwise have acted, regarding the disposition of his property or any part thereof." The sixteenth instruction was also on the subject of undue influence, and it is urged that both were erroneous because the language used was such that the jury would infer that the undue influence referred to consisted of physical influence which restrained and coerced, and that if the jury did not find that particular kind of influence it should find in favor of the will. The language of the instructions includes physical restraint and coercion, but it also includes improper conduct which constrained or induced the testator to act in the manner in which he would not otherwise have acted, and it was not calculated to mislead the jury into believing that only physical restraint was referred to.

Instruction 17 begins with the statement that it is not a question for the jury to determine whether the alleged will and codicil offered in evidence were a just, wise or proper disposition of the property of the testator. Then follows the statement that the owner of property has a right to dispose of the same as he may choose, and his disposition is valid whether it is reasonable and just or not, unless it is shown that the disposition made by the testator was induced by undue influence or that the testator was not of sound mind. The objection made to the instruction is that it ignores the right of the jury to consider the disposition of the property as evidence on the question of unsoundness of mind or undue influence. The instruction says nothing about the right of the jury to consider the provisions of the will on these two questions, but they were clearly told in instruction 5 which was given at the request of the contestants, that the propriety or impropriety, reasonableness or unreasonableness, of the provisions of the will might be considered in determining whether the tes-

tator was of sound mind or whether the will was procured by undue influence.

Instruction 18 was upon the effect of the relation existing between the testator and Benner as his attorney on the question of undue influence, and it is objected that the second paragraph of the instruction is disconnected, misleading and meaningless to the jury and unintelligible. It says: "You should also consider the nature of the benefit taken by Adolph L. Benner under the provisions of said will and codicil, and also whether the provisions of said will and codicil are in substantial accord with the intentions of the testator as expressed to others, outside the presence of said Benner." This language is not misleading. It is perhaps not as full as it might be, but instructions 22 and 23, which were requested by the contestants and given, are on the same subject, and in connection with this instruction correctly stated the law on this question.

Instruction 19 is as follows:

"Where there is no evidence of actual undue influence, the jury in considering the question of undue influence, should take into account all the facts as disclosed by the evidence relating to the circumstances surrounding the testator at the time of the execution of the will, such as the nearness or remoteness of relationship where relatives have been ignored in the will; the intimacy or lack of intimacy between testator and such relatives; the physical and mental condition of testator at the time of making such will; whether or not the relations between testator and legatee were such that testator was physically or mentally dependent upon legatee, and whether such will was prepared by the legatee of his own motion, or whether as attorney for testator the legatee prepared such will at the request and direction of such testator. All of these things, so far as disclosed by the evidence, should be considered by you in determining the weight to be given the fact that a fiduciary relation existed between the proponent Benner and the tes-

tator William H. Godair at the time of the preparation and execution of the will and codicil in question."

The objection is made that the jury would infer from the first clause of the instruction that there is no evidence of undue influence in the case, and the next clause tells them what they should take into account in considering the question of undue influence, and counsel ask, if there is no evidence of undue influence in the record why should the jury consider the question at all? This instruction ought not to have been given. The just inference to be drawn by the jury would be that there is no evidence of actual undue influence. That expression is not accurate. It was no doubt intended to mean the same thing as the expression contained in the former opinion of this court, that no direct testimony to show any undue influence was introduced. There is no direct testimony of undue influence in this case. There was an issue of undue influence, which the jury were required to consider. In passing upon that issue the jury were required to determine the weight to be given the fiduciary relation existing between the testator and Benner, his attorney. In determining that question the things referred to in the instruction were proper to be considered by the jury, but it was not proper for the court to gather those facts together in an instruction and present them to the jury as a summing up of the matters which they should consider on that issue. In the form of an instruction as to the law it really presents to the jury an argument on the facts. It was error to give this instruction, but the evidence was not of such a character as would have justified a verdict finding the execution of the will to have been induced by the undue influence of Benner. The case rested upon a legal presumption arising from his relation as attorney to the testator and his appointment as trustee and executor under the will. The circumstances of the execution of the will, the execution and contents of the previous wills, the relation of the testator to his relatives who are now contesting

his will, and his previously expressed intention of establishing a charity of a character similar to that provided for in the will, required the verdict which was returned by the jury, and we will not reverse the decree rendered upon that verdict because of error in the instructions.

Instruction 13 asked by the appellants told the jury that if at the time of executing the will the testator was unduly prejudiced against his son by the representations of his lawyer, which were false and made for the purpose of prejudicing the testator against his son, and the testator relied upon such representations and executed the will because of them, the jury should find that the paper produced was not the will of the testator. It was properly refused because not based on the evidence.

The decree will be affirmed.

*Decree affirmed.*