Stephen J. Reget and Mary E. Reget, Plaintiffs-Appellees, v. Dempsey-Tegler & Co., Inc., a Corporation, Defendant-Appellant.

Gen. No. 65–49.

Fifth District.

April 20, 1966.

Lueders & Robertson, of Granite City, for defendant-appellant.

Kenneth F. Kelly, of Granite City, for plaintiffs-appellees.

MORAN, J.

Plaintiffs sought judgment against the defendant for rentals accrued under a written lease after defendant had vacated the premises before the expiration of the agreed term; defendant sought setoff for wrongful failure of plaintiffs to permit mitigation of damages by refusing to accept a subtenant offered by defendant. The trial court allowed plaintiff's claim in full and denied defendant's claim to a setoff, and from such denial the defendant appeals to this court.

Plaintiffs-appellees, Stephen J. Reget and Mary E. Reget, owned a two-story building in Granite City, Illinois, a part of which they leased to Dempsey-Tegler & Com-

pany, Inc., for a period of five years at a monthly rental of $300. The upper floor of the building was used as a twenty-three room rooming house; a portion of the ground floor was used as a restaurant and the remaining ground floor area, formerly a tavern, was rented to the defendant.

The lease provided (1) that the use of the premises was for no other purpose of business than to be occupied by defendant as an investment brokerage and associated business office; (2) forbade assignment, subletting or use for any other purpose or business without the written consent of the landlord; (3) granted an option to plaintiffs, on default of defendant, to forfeit lease, retake possession, and relet the premises to any rental readily available, with defendant to remain liable for all unsatisfied rentals during the remainder of the term.

Defendant notified plaintiff by letter dated April 16, 1963, that it was vacating the premises and requested a cancellation of the lease, which plaintiffs refused. The defendant vacated the premises on or about July 1, 1963, and employed a real estate broker to find a subtenant for the premises. Defendant's real estate broker secured a tenant to sublease the premises from the defendant at $200 per month for the remainder of defendant's term for use as a beauty parlor. Defendant's request for permission from plaintiffs to sublease to this tenant was refused.

Plaintiff, Stephen J. Reget, testified that he received a letter and later a telephone call from the defendant requesting plaintiffs to agree to a sublease of the premises for a beauty shop. He testified that he investigated the proposed subtenant and his investigation disclosed that the proposed subtenant intended to rent out eight booths to eight different beauty operators; that the investigation also disclosed that the proposed subtenant's credit rating was not acceptable; that he did not consider the

34

proposed subtenant a suitable tenant and therefore refused him as a subtenant.

An agent for the Morriss Realty Company testified on behalf of the defendant that his company had been employed to find a suitable subtenant for the premises in question; that he had found a subtenant who wished to place a beauty parlor in the premises and who gave him a $400 deposit on the rent. The plaintiff objected to this testimony on the ground that the lease could be assigned or sublet only with the written consent of the lessor, therefore the lessor had the absolute right to disapprove any prospective lessee or assignee of the lease and therefore had no duty to mitigate damages. This objection was overruled by the court.

The assistant secretary of the defendant testified that defendant vacated the premises in July of 1963; that after the defendant vacated the premises it employed Morriss Realty Company to secure a suitable subtenant for the premises; that he talked with Stephen Reget about the proposed subtenant and that Reget was opposed to a beauty parlor and did not like the credit rating of the proposed subtenant; that he told Reget the defendant would still be liable for any default in the payment of $300 even though the subtenant may default.

Defendant contends that under the law of Illinois a landlord has a duty to mitigate damages by accepting a suitable subtenant notwithstanding the lease which prohibited the tenant from subletting without the written consent of the landlord; that plaintiff refused a suitable subtenant offered by defendant even though defendant obligated itself to remain liable for the rent for the remainder of the lease period.

Plaintiffs answer that they have always been willing to accept a suitable subtenant so that defendant's first contention is not an issue in this case; that they refused to accept this particular subtenant because their investi-

35

gation disclosed his credit was bad and also because the proposed subtenancy would change the nature of the business conducted on the premises in violation of the express provisions of the lease.

The rulings and conduct of the trial indicated that the trial court decided this case on the sole question of whether or not the plaintiffs were arbitrary or unreasonable when they refused to allow defendant to sublease to the proffered subtenant. This was indicated by the trial court's overruling plaintiffs' objection to the testimony of the rental agent that he obtained a subtenant who wished to operate a beauty shop on the premises and also by the following:

> The court: "I understood Mr. Reget to testify that the Norrises intended to sublet eight different booths for customers, is that right? Mr. Kelly, am I right on that?"

The defendant produced a proposed subtenant with a deposit of $400 who desired to operate a beauty shop consisting of eight booths to be sublet to individual operators. Defendant also obligated itself to remain liable for the balance of the rent due under the lease. Does this evidence standing alone prove that the proffered tenant was suitable?

In Scheinfeld v. Muntz TV, Inc., 67 Ill App2d 8, 214 NE 2d 506, the court held that a proposed subtenant would be suitable where the tenant offered a statement as to the business history of the proposed subtenant, of the provisions of the proposed sublease indicating that sublessee would be a suitable sublessee and would use the premises for the same restricted purpose as that provided for in the lease, and the lessee's continuing obligation to pay the difference in rental provided for in the lease.

The Appellate Court also held that a prohibition against subletting without the written consent of the lessor does not entitle the lessor to arbitrarily reject a

suitable subtenant and continue to hold tenant liable for the whole rental when the lease contains no provision expressing the intent of the parties concerning the mitigation of damages. We do not pass on this particular question because it is not before us. However, in so holding, the court pointed out that it did not mean that the landlord had to rent his property for a purpose which might damage it.

■■■ The burden of proving the Norrises were acceptable subtenants rested with defendant. Hinde v. Madansky, 161 Ill App 216. If a party asserts a claim for damages, the claim is his to prove. So, too, if a party counterclaims, the counterclaim is his to prove. To show that the Regets unreasonably rejected a subtenant the defendant must show the proposed subtenant met reasonable commercial standards. Defendant offered no evidence of the Norrises' suitability as subtenants save a $400 deposit on the proposed sublease and the assurance that it would remain liable for the rest.

■ We believe the sublessee's credit is a meaningful factor in the lessor's determination of the proffered subtenants' acceptability. Regardless of the type business conducted by the proposed subtenant, the enterprise has a tenor which can detract from the value of the entire premises. Thus a given business can be acceptable in name, but unacceptable in the way it is conducted. The capital and credit of an entrepreneur controls to some extent the manner of his business. So, too, does the financial responsibility bear on the day-to-day upkeep, and day-to-day appearance of the premises. Another more remote consideration based to some degree on financial strength involves labor difficulties. So, too, would a series of rapid turnovers caused by the weakness of subtenants' businesses detract from the value of the overall premises.

■ Plaintiff also argues that the change in use of the premises was undesirable, and the refusal was all the

more reasonable because of this proposed variance in use from a brokerage house to a beauty parlor. A standard of reasonable commercial judgment has been applied in cases where the plaintiff-lessor has reentered the premises; this standard is a worthwhile measure of the reasonableness of the lessor's actions. By this standard a landlord should not be required to relet the premises for a different purpose if he reasonably believes that such use will damage the premises. Consumers Market House Co. v. Powers, 192 Ill App 89.

The burden was the defendant's and no evidence of suitability was introduced. There was evidence of the Norrises' unsatisfactory credit and the dissimilar and possibly speculative use they proposed to make of the premises. In view of the foregoing we cannot say that there was no evidentiary basis for the trial court's holding.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.