W. RUSSELL ARRINGTON et al., Plaintiffs-Appellees, Cross-Appellants, v. WALTER E. HELLER INTERNATIONAL CORPORATION, Defendant-Appellant, Cross-Appellee.

(No. 61294;

First District (2nd Division)—July 8, 1975.

Milton I. Shadur, R. Dickey Hamilton, and John McGinnis, all of Chicago (Devoe, Shadur & Krupp, of counsel), for appellant.

Albert E. Jenner, Jr., Donald R. Harris, John G. Stifler, Arthur M. Sussman, and Carter H. Klein, all of Chicago (Jenner & Block, of counsel), for appellees.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

This appeal seeks reversal of those portions of a judgment order entered by the Circuit Court of Cook County granting plaintiffs' request for a declaration that defendant violated the terms of its lease with plaintiffs in that it acted unreasonably in withholding its consent to plaintiffs' leasing of space to Continental Illinois National Bank & Trust Company

of Chicago (Continental) in the building owned by plaintiffs which is located at 30 North La Salle Street and to be known as the Heller International Building. Additionally, plaintiffs cross-appeal from the denial of count II of their complaint seeking damages, attorneys' fees and expenses.[1]

The pertinent provisions of the lease in issue read as follows:

"4.1 *Name of Building.* During the term of the Lease, the Building shall be known as the HELLER INTERNATIONAL BUILDING, or by such other similar name as shall be designated by Tenant and approved by Landlord, which approval shall not be unreasonably withheld. Landlord shall, at Tenant's expense, install suitable signs, both on the interior and exterior of the Building, containing the name of the Building designated as above provided. The design and location of such signs are to be subject to the approval of Landlord, Tenant and Tenant's designer for the project, which approval shall not be unreasonably withheld; in no case will any sign be located on the roof of the Building."

"4.4 *Public Image of the Building.* Landlord recognizes that the Building name will be designated by Tenant in accordance with the provisions of Section 4.1 of this Article IV, which name is intended to reflect the business reputation and good-will of Tenant. In order to assure Tenant that the image of the Building to the general public will be such as to not adversely affect the business reputation and good-will of Tenant, Landlord covenants and agrees that it will not enter into any lease or other arrangement respecting the use of space on the ground floor, mezzanine and lower concourse of the Building, without the written consent of Tenant, which consent shall not be unreasonably withheld."

At trial the court held that the language of the lease—especially of paragraph 4.4—was ambiguous and therefore testimony was received as to the negotiations preliminary to the execution of the Heller lease. The standard by which the trial judge allowed this parol evidence was whether or not the person offering the testimony was a "principal." The practical effect of his application of this standard was to admit evidence as to the subject matter of the negotiations offered by the plaintiffs' witnesses Alan Golboro, first vice president of Tishman Construction Company (Tishman), and William Friedman, one of the plaintiffs, and defendant's witness Franklin Cole, chairman of the board and chief exec-

---

[1] The cause proceeded to a bench trial upon plaintiffs' complaint for declaratory judgment and related injunctive and other relief, defendant's answer and counterclaim and plaintiffs' answer to the counterclaim.

utive officer of defendant, and to exclude the testimony of defendant's witnesses James Rood, former general counsel for defendant and Maynard Wishner, executive vice president of defendant. Rood and Wishner had attended the meeting wherein paragraph 4.4 had been discussed and negotiated, whereas Cole had not been in attendance at that meeting and indeed testified that he had never specifically discussed paragraph 4.4.

The pleadings and evidence developed the following facts. Plaintiffs were[2] composed of a general partnership consisting of nine local businessmen and attorneys and Tishman, who, in a joint venture, constructed, owned and were leasing a new 42-story office building in Chicago's financial and professional district. Defendant is principally engaged in the business of providing commercial counseling and financial services to businesses and banking entities through both its own facilities and those of a number of subsidiaries in the United States and in 20 other countries.

On September 7, 1973, following several months of negotiations initiated by plaintiffs, the parties entered into a 20-year lease under which plaintiffs leased to defendant 126,000 square feet on the top seven floors of the building with options to lease additional space on 15 other floors. The annual base rental was to be $1,184,832 with no rent payment to be made for the first two years. Defendant contended that this rental was $200,000 above the cost of obtaining comparable space at another Chicago location, and that this additional "premium" was to be paid for certain features of the lease, namely the right to name the building and the right to prevent rental to ground-floor and street-level tenants—by withholding its consent—to assure that such leasing would not impair upon the image of the building as it was to be named by the defendant. Defendant and plaintiffs, apparently from the start of negotiations, mutually referred to the building as the "Heller International Building."

The lease also contained provisions prohibiting the plaintiffs from leasing to tenants whose business would be inconsistent with a first-class office building, it granted to the defendant the right to have and approve signs containing its name, and to change the name of the building—both subject to the plaintiffs' approval—and the right to approve the building directory.

Cole testified that Golboro and Friedman had initiated the meetings

[2] After briefs had been filed in this case, we were advised by the parties that plaintiffs, d/b/a the LaSalle-Tishman Venture, filed for bankruptcy in United States District Court in January of 1975. The primary mortgagor has apparently been assigned the rights of the plaintiffs under the leases in issue. These changes in the financial status of the venture do not affect our disposition of this case.

leading to negotiations on the lease in September of 1972. Cole further testified that, at a meeting on December 15, 1972, he informed Golboro and Friedman that defendant would be willing to pay 1 cent a share—or $200,000—a year to acquire a Heller International Building on La Salle Street. Friedman testified that he recalled Cole's assertion to have been that defendant would be willing to pay 2 cents a share for a prime location on La Salle Street without regard to the name of the building. Additionally, Friedman testified, defendant's image, prestige and good will were not discussed, and its prominence taken for granted which contrasts with Cole's assertions that all of these had been discussed in the context of how they would be reflected by the building.

Golboro participated in the negotiations as to the Heller lease and was handling the leasing operations for plaintiffs, a task at which he had extensive experience. In testimony during the presentation of plaintiffs' case in chief, he asserted that the "lead tenant is the first tenant in the building, and the principal tenant is the dominant tenant in the building, what you name your building after, or what your building is known as," and stated his opinion that "the Heller International Building is [so] named because Heller leased the amount of space they did."

In April, 1974, representatives of Continental met with Golboro at plaintiffs' instigation to discuss their possible tenancy on the ground floor of the building. Golboro suggested that they contact Cole which they apparently did on April 22. There is a dispute as to when Cole subsequently spoke to Golboro and as to the forcefulness and finality of the refusal given at that time, but there is no question that plaintiffs were informed, at the very least, of defendant's *objection* to the Continental lease prior to June 28, 1974, when it was signed by Continental. On July 9, the day after defendant received notice that the lease had been entered into, an officer of defendant sent a letter to Golboro charging this action to be a "flagrant violation" of the Heller lease, as a result of which defendant would pursue its legal remedies. Cole sent a formal written refusal to consent to the lease later that month alleging, in pertinent part that, in the opinion of the defendant:

> "[I]t is unquestioned that our public image, business reputation and good will would be adversely affected by having a similar major corporate financial services institution occupying ground floor, mezzanine and concourse space in the same building where our principal business offices and international headquarters are located and which bears our corporate name."

In a subsequent series of meetings between plaintiffs and defendant, suggestions were made by both parties as to possible alternative tenants including quality restaurants, retail establishments, foreign banks, Amer-

ican National Bank & Trust (a wholly owned subsidiary of defendant), other major banks in the city as well as the possibility of defendant purchasing the building from plaintiffs. Some alternatives were objected to by defendant and some by plaintiffs. Upon failure to resolve the dispute, suit was commenced on November 13, 1974.

As the result of the trial court's ruling regarding persons who would be allowed to testify as to the negotiations leading to the lease, certain testimony offered by the defendant was excluded. The excluded evidence, most important of which was Wishner's testimony as to the February 15, 1973, meeting where paragraph 4.4 was discussed and negotiated, was, for the most part, submitted to this court for review in the form of offers of proof. Wishner testified that he suggested at that meeting that any one tenant on the ground flood be limited to a certain amount of square footage. This suggestion was apparently unsatisfactory to plaintiffs in that Golboro felt it would "tie his hands" and he therefore made a pledge that "we will never have a bank on the first floor." Wishner rejected this alternative since he felt, and apparently stated, that Golboro's pledge would not sufficiently take care of the "dominance problem," *i.e.*, that defendant wanted to be the dominant tenant and that an overly prominent ground-floor tenant, whether a bank or not, would detract from that status. Representatives of the defendant then suggested that they be given the right to approve the tenants on the ground floor. This suggestion was accepted by the plaintiffs with the reservation that the right had to be exercised reasonably. The lease was thereafter drafted. This testimony as an offer of proof was, of course, neither taken into consideration by the court in arriving at its findings nor subjected to cross-examination.

A draft lease which had been submitted by plaintiffs to defendants—apparently prior to the February 15 meeting—was also excluded as part of the preliminary negotiations under the parol evidence rule. Later in the proceedings, however, in rebuttal testimony under the inquiry of defendant's counsel, Friedman testified that he would not have signed a lease containing a clause prohibiting banks as tenants on the ground floor. Defendant's counsel asked whether the draft lease had contained such a provision. The trial judge allowed this inquiry for the purpose of attacking credibility and Friedman admitted that the draft lease had, in fact, contained such a provision. Subsequent attempts to elicit from Friedman whether the provision had been discussed at the meetings were objected to and ruled inadmissible under the parol evidence rule.

## I.

At the outset we first consider the question concerning the ruling of

the trial judge with respect to the parol evidence. Defendant asserts the trial court's rulings constituted clear, prejudicial error. On the other hand plaintiffs contend the trial court allowed parol evidence over their objection, but having allowed it, the trial court's action was proper in excluding certain evidence.

■■ When the language used in a lease is ambiguous, extrinsic evidence may be introduced to explain it so long as the evidence does not "change or vary" the lease. (*Continental Illinois National Bank & Trust Co. v. Art Institute* (1951), 409 Ill. 481, 489, 100 N.E.2d 625; *Olson v. Rossetter* (1948), 399 Ill. 232, 241, 77 N.E.2d 652; *Furst v. Board of Education* (2d Dist. 1959), 20 Ill.App.2d 205, 217, 155 N.E.2d 654.) Specifically, in cases of ambiguity, negotiations leading up to the lease can be considered to determine the intent of the parties in their use of particular words and phrases. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill.2d 272, 283, 154 N.E.2d 683; *Chicago Auditorium Association v. Corporation of the Fine Arts Building* (1910), 244 Ill. 532, 539, 91 N.E. 665.) In the present case, as already noted, the trial court several times expressed concern as to the intent of the parties, particularly as to paragraph 4.4. As the court believed the language was ambiguous, we believe the court should have allowed all of the offered testimony as to the preliminary negotiations to the extent that it explained rather than changed or varied the language of the lease. We can find no basis for admitting the testimony of "principals" and excluding that of "non-principals," especially when the latter had participated in the negotiations. The admission of such testimony must be based on the character of the evidence and not the status of the witness offering the evidence. As Wishner and Rood on behalf of the defendant participated in the negotiations, their testimony as to the negotiations should have been received in order to understand and explain the language. Although we hold the trial court erred by not allowing this testimony, we do not consider this error as requiring a remand for a new trial.

## II.

The critical issue before this court is whether defendant's withholding of consent to approve plaintiffs' lease with Continental was unreasonable.

## A.

At the outset we must first consider defendant's contention that the trial court erroneously shifted the burden of proof to defendant.

In plaintiffs' case in chief, they attempted to prove Heller's unreasonableness in refusing to consent to the Continental lease only in the

context of interpreting the "image of the building"—the protection of which was the only valid justification for such refusal—as the image of a 42-story office building without reference to its name. The only admitted evidence on behalf of plaintiffs was the testimony of Golboro and Gale M. Melick of Continental, as well as exhibits and excerpts from the deposition testimony of Cole. Essentially this evidence showed the harm that would be caused to Continental if Heller's refusal prevented them from leasing the space in the building, the fact that actual loss of customers was not what concerned the defendant, and Golboro's opinions on what constituted lead, principal and dominant tenants. Perhaps most important to the plaintiffs' case was the concession by defendant that Continental was a "first-class tenant."

After the plaintiffs rested and upon defendant's motion for a directed finding, the court stated that the burden was on the plaintiffs to show that the proposal will not adversely affect the business reputation and good will of the defendant. Plaintiffs, in response, expounded their view that the real issue in the case was whether it was reasonable to refuse consent where there was no basis for believing that the image of the building as a *building* would be adversely affected by the Continental lease. Defendant contended that the "image of the building" referred to the building *as* the Heller International Building.

Subsequent to this colloquy, the judge expressed concern about whether there was enough evidence to show the actions of defendant to have been unreasonable. The court then reserved ruling on defendant's motion for a directed verdict. After all the evidence had been presented and before final arguments, the court denied the motion.

In his findings at the close of all the evidence, the trial court held that plaintiffs had established a *prima facie* case of unreasonableness; that the *burden of proof* then shifted to the defendant; and that the defendant had failed to sustain its "burden of proof" by "clear and convincing" evidence. The trial court then found the defendant's withholding of consent to plaintiffs' leasing space to Continental was unreasonable.

Defendant urges that the trial court erroneously shifted the burden of proof to the defendant, and that, as the court said, defendant "failed to prove by clear and convincing evidence that the withholding of the said consent was not unreasonable."

■■ While we can imply from the record that the judge was referring to defendant's burden of production or of going forward with the evidence (*Ermold v. Bear* (1934), 358 Ill. 233, 238, 193 N.E.2d 184; *Noyes v. Gold* (1st Dist. 1941), 310 Ill.App. 1, 6, 34 N.E.2d 1), there is nothing in the record to suggest that the judge was not imposing a higher

standard of proof than normally is required in civil cases on the defendant.

As stated by this court in *Noyes,* at page 6:

"The general rule that the burden of proof rests on the party having the affirmative of the issue is applicable to actions on contracts and the usual test employed to determine on which side the burden of proof lies is to ascertain which party would be entitled to a verdict if no evidence were offered on either side of the issue. *Where, however, a party having the affirmative of the issue has made out a prima facie case the burden of evidence as distinguished from the burden of proof may shift to the adverse party, but the burden of proof properly so-called, does not shift, and the party having the affirmative when the issues are made up must make out a case by a preponderance of the evidence.* One who asserts that a contract has been abrogated or canceled by agreement has the burden of proof. The burden of proving a case by a preponderance of the evidence rests upon the party asserting the affirmative of the issue, and this never shifts during the course of the trial but remains with him to the end. The burden of proof is determined by the pleadings, and at the end of the case the pleader upon whom the burden rests must have sustained his position by a preponderance of the evidence." (Emphasis supplied.)

It is generally held the burden of persuasion never shifts, whereas the duty of producing evidence to satisfy the court does shift. (See 9 Wigmore, Evidence §§ 2485-89 (3d ed. 1940).) Thus in this case plaintiffs had to make out a prima facie case of the issues raised by the pleadings in order to overcome a motion for a directed finding at the close of the plaintiffs' case. As the trial court reversed its ruling on said motion, the burden of producing evidence shifted to the defendant, but we can find no authority to suggest the burden of persuasion shifted to the defendant. Upon the close of all the evidence the trial court had the responsibility of determining, in civil cases such as this, whether the plaintiffs proved their case by a preponderance of the evidence.

Here the trial court, as we understand its statements, imposed upon the defendant the burden of proof by clear and convincing evidence. The "clear and convincing" standard is reserved for exceptional cases such as in *Shipley v. Shipley* (1916), 274 Ill. 506, 514, 113 N.E. 906 (parol evidence when deed is lost); *Johnson v. Lane* (1938), 369 Ill. 135, 147, 15 N.E.2d 710 (fiduciary relationship shown by parol evidence); *Krueger v. Dorr* (2d Dist. 1959), 22 Ill.App.2d 513, 528, 161 N.E.2d 433 (impeachment of a notary's certificate). In each of these cases there is a

special need for a greater burden of proof either due to contrary presumptions or the potential unreliability of the evidence in question. In civil cases, the burden of proof which rests upon the party holding the affirmative of an issue is to prove the issue by a preponderance of the evidence. In *Teter v. Spooner* (1922), 305 Ill. 198, 210, 137 N.E. 129, the supreme court held it to be error when the jury as the fact-finder is *instructed* to apply a heavier standard of proof than required. Surely, as here, where the fact-finder states that he *is* applying a heavier standard, the existence of error is even clearer.

We have not been informed of, nor have we been able to find any authority to support the trial court's position. Here the plaintiffs had the affirmative of the issue, and it was their duty to establish by a preponderance of the evidence that defendant's action was unreasonable in withholding consent to the lease with Continental. Although these trial errors would in themselves justify our reversal and remand in consideration of the parties' expressed interest in expediting this matter, we deem it appropriate to determine from the record whether plaintiffs made out a case by preponderance of the evidence.

### B.

There is no question that, as framed by the pleadings, the burden of persuading the trier of fact on issues of whether consent has been unreasonably withheld in lease cases falls upon the party alleging the withholding to have been unreasonable. (*Reget v. Dempsey-Tegler & Co.* (5th Dist. 1966), 70 Ill.App.2d 32, 37, 216 N.E.2d 500. See generally *Bell v. School District No. 84* (1950), 407 Ill. 406, 416, 95 N.E.2d 496.) In most of the landlord-tenant cases in which the issue has arisen, it has been the landlord who was withholding consent as to the tenant's subletting to a proposed subtenant. *Reget v. Dempsey-Tegler & Co.* (tenant raised issue as a setoff); *Scheinfeld v. Muntz TV, Inc.* (1st Dist. 1966), 67 Ill.App.2d 8, 214 N.E.2d 506 (tenant raised issue as duty to mitigate damages); *Edelman v. F. W. Woolworth Co.* (1st Dist. 1929), 252 Ill. App. 142 (tenant raised issue as defense to forcible detainer action); *Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary District* (1st Dist. 1970), 131 Ill.App.2d 527, 266 N.E.2d 405 (tenant raised issue in bringing action for declaratory judgment).

■■ In the present case, it is the tenant that has been given the power to withhold consent and the landlords who are alleging the unreasonable nature of the tenant's exercise of this power as to a potential lessee. This unusual reversal of roles is indicative of the special character of the lease in this case. Where the lease merely contains a provision—without more —granting a person, normally a landlord, the power to withhold consent,

regardless of whether explicitly qualified to reasonable exercises of that power as in the present case, the courts have held the person's refusal to consent to a person acceptable by reasonable commercial standards to be an unreasonable exercise and thus violative of the lease. (*Reget*, 70 Ill.App.2d 32, 37; *Scheinfeld*, 67 Ill.App.2d 8, 16-17; *Chanslor-Western*, 131 Ill.App.2d 527, 529-31; *Edelman*, 252 Ill.App. 142, 144-45; *Mowatt v. 1540 Lake Shore Drive Corp.* (7th Cir. 1967), 385 F.2d 135.) Where the lease contains provisions giving further meaning to the clause granting a person the power to withhold consent, then the standard by which reasonableness is judged is varied accordingly. Where a clause prohibits business competitors of the lessee from being subtenants, the lessor would be reasonably exercising his power to withhold consent by refusing to accept a business competitor regardless of how acceptable the competitor may be by reasonable commercial standards. (*Edelman*, 252 Ill.App. 142, 145.) A lease must be interpreted and construed as a whole in order to adduce the intent of the parties as to particular provisions since it will be presumed that everything in a lease was inserted deliberately and for a purpose. *Guhl v. Guhl* (1941), 376 Ill. 100, 109-10, 33 N.E.2d 185; *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 283; *Schiro v. W. E. Gould & Co.* (1960), 18 Ill.2d 538, 543, 165 N.E.2d 286.

The defendant in the present case never disputed that Continental was a wholly acceptable tenant by reasonable commercial standards. The power to withhold consent granted to defendant by paragraph 4.4 of the lease must be interpreted in light of the other provisions of the lease, specifically, the right to name the building, the provisions of paragraphs 6.1(2) and 6.2 of the lease which cover the exclusion of tenants who would *not* be acceptable in a building such as the one in issue according to reasonable commercial standards, and other ancillary provisions making it clear that the defendant was to have—or at least share—control over the "image" the building was to present to the general public and that the reason for this control was to preserve defendant's image to the general public. It is not to be assumed that the right to name the building —to say nothing of the other provisions—was inserted in the lease solely to assuage the collective ego of the defendant corporation. Regardless of whether the power to withhold is to be strictly construed as a restrictive covenant, which we do not here decide, it is clear that if the right to name the building and the other bargained-for provisions of the lease are to have any meaning, the "image of the building" must be seen as synonymous with the image of the defendant's international headquarters and principal place of business and thus with the image of the defendant itself.

Viewing the case from that perspective, we must examine the evidence

to determine whether the plaintiffs sustained their burden of proving their case by a preponderance of the evidence. Plaintiffs presented no evidence showing that defendant would have been unreasonable to assume that damage would be done to the image of the building as the Heller International Building by having the largest bank in the midwest renting the entire ground floor and mezzanine.

Plaintiffs presented no evidence showing that a general loss of respect in the business community could not have been foreseen by the defendant in the making of their decision or that the foreseeing of such occurrences would have been an unreasonable basis for withholding consent. The fact that neither the board of directors nor Cole personally foresaw an actual loss of customers is not sufficient to have satisfied the plaintiffs' burden in this regard.

Even if the court was justified in finding that plaintiffs had established a prima facie case of unreasonableness in the context of plaintiffs' view of the phrase, the "image of the building," the totality of the evidence adduced at trial makes it clear to us that what the parties intended in referring to the "image of the building" was the image of the Heller International Building. Viewing the phrase from this perspective, it is equally clear that plaintiffs failed to prove their case of unreasonableness by a preponderance of the evidence. We reach this conclusion without taking into consideration the testimony excluded by the court on the basis of the parol evidence rule since this evidence was not subjected to cross-examination.

### III.

■■ Finding as we do, that plaintiffs failed to establish that defendant's actions were unreasonable, we also find plaintiffs' cross-appeal for damages, attorneys' fees, and costs to be without merit. In addition to this prayer being inconsistent with our holding, that portion of it related to attorneys' fees and costs is not supported by the provision in the lease upon which the prayer is based.

Paragraph 11.9(c) of the lease provides that:

> "Tenant shall pay all attorneys' fees and expenses of Landlord incurred in enforcing any of the obligations of Tenant under this lease and vice versa."

By the plain language of that provision, the landlord is entitled to such fees and costs as are incurred "in enforcing any of the obligations of Tenant under this lease." In declaratory judgment actions, rights are being declared; obligations are *not* being enforced. The trial court, therefore, properly denied this count.

As to the judgment of the circuit court of Cook County wherein it

granted plaintiffs certain declaratory relief, said judgment is hereby reversed and remanded with directions to enter judgment for the defendant. In all other respects the said judgment is affirmed.

Affirmed in part; reversed and remanded in part.

STAMOS and LEIGHTON, JJ., concur.