CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellees, *v.* NORTHWESTERN UNIVERSITY, Defendant-Appellant.

First District (3rd Division) No. 62156

Opinion filed January 8, 1976.—Modified upon denial of rehearing March 4, 1976.

Sidley & Austin, of Chicago (Martha P. Mandel, Henry A. Preston, George A. Platz, and Dale R. Crider, of counsel), for appellant.

Price, Cushman, Keck, Mahin & Cate and Homer E. Rosenberg, both of Chicago (Robert C. Keck, Robert S. Cushman, and Ward A. Meythaler, of counsel), for appellees.

Mr. JUSTICE McGLOON delivered the modified opinion of the court on denial of petition for rehearing:

Plaintiffs are the assignees of the lessees of five contiguous sublots and bring this action to set aside an appraisal of said sublots made for the purpose of determining the rent to be paid on each sublot. Finding in pertinent part, that the appraisal report was void because the appraisers exceeded their authority by valuating the five sublots as a tract instead of placing a value on each of the sublots separately, the trial court ordered that summary judgment be entered in favor of plaintiffs and that the parties appoint in accordance with the five leases new appraisers who shall proceed to place a value on each of the five sublots separately. It is from this order that defendant now appeals.

Defendant contends on appeal that (1) the trial court's finding that the lots were appraised as a tract is supported solely by the fact the lots were appraised at the same time and at the same value per square foot, and not by any evidence that the appraisers failed to consider the lots individually; (2) that the appraisal of the lots at the same time and same square foot value is supported by reasonable considerations and within the discretion of the appraisers under the leases and that therefore the appraisal should be upheld.

We affirm.

The five contiguous sublots involved in the instant case are located at the southeast corner of Church and Orrington Streets in Evanston, Illinois, and are owned by defendant Northwestern University. Sublots 1, 2 and 3 were originally leased to Victor and Charlotte Carlson and sublots 4 and 5 were originally leased to Joseph Work. By various assignments the leasehold estates created by the five leases became vested in the plaintiffs in the instant case. Each of the sublots has been improved, with an office building constructed on sublots 1, 2 and 3 and a hotel constructed on sublots 4 and 5.

There are separate leases pertaining to each of the five sublots. The lease for sublot 1 provides for a term beginning May 1, 1928, and terminating August 31, 2021, and a rent of 6% of a valuation of $81,000 or $4,860

per year subject to reappraisal for the term beginning July 1, 1974. The lease for sublot 2 provides for a term beginning September 1, 1922, and terminating August 31, 2021, and for various rents for the period September 1, 1922, to July 1, 1949. The lease for sublot 2 further provides for a rent of $960 per year, 4% of a valuation of $24,000, for the period July 1, 1949, to June 30, 1974, subject to reappraisal for the period July 1, 1974, to June 30, 1999, and the period July 1, 1999, to August 31, 2021. The lease for sublot 3 provides for a term beginning September 1, 1922, and terminating August 31, 2021, and for various rents for the period September 1, 1922, to July 1, 1949. The lease for sublot 3 further provides for a rent of $2,400 per year, 4% of a valuation of $60,000, for the period July 1, 1949, to June 30, 1974, subject to reappraisal for the period July 1, 1974, to June 30, 1999, and for the period July 1, 1999, to August 31, 2021. The leases for sublots 4 and 5 each provide for a term beginning October 1, 1921, and ending September 30, 2021. The leases for sublots 4 and 5 further provide for a yearly rent of $210 and $200, respectively, subject to reappraisal on July 1, 1924, and at 10-year intervals thereafter. (The record is silent as to how sublots 4 and 5 were appraised prior to the instant case.)

As indicated by the above provisions of the five leases, each of the sublots were subject to reappraisal for the term beginning July 1, 1974. There are further provisions in each lease which provide that the rent for the term subject to reappraisal is to be a certain percentage (4% for sublots 2, 3, 4 and 5 and 6% for sublot 1) of "the true cash value of said demised premises at the time of such appraisal, not taking into consideration the improvements thereon." Each lease further provides that if the parties are unable to agree on the "true cash value" of the demised premises, each party is to select an appraiser, that the appraisers selected by the parties would in turn select a third appraiser, and that the valuation agreed upon by the majority of the appraisers would provide the basis for determining the revised rent.

Unable to agree on the value of any of the five lots prior to July 1, 1974, plaintiffs appointed Harold J. Reiger and defendant appointed Herman O. Walther as appraisers. In accordance with the provisions of each lease, these appraisers then selected a third appraiser, James J. Curtis. In a letter addressed to plaintiffs and defendant, Mr. Curtis and Mr. Walther indicated that the results of their appraisal showed that the true cash value of the demised premises, not taking into account the improvements thereon, was $18.50 per square foot. In a separate letter, Mr. Reiger indicated that he dissented from the above value and instead appraised the market value of the land, not taking into account the improvements

thereon, at $13.50 per square foot. All three appraisers defined true cash value or market value as follows:

> "The highest price estimated in terms of money which a property will bring if exposed for sale in the open market, allowing a reasonable time to find a purchaser who buys with knowledge of all the uses to which it is adaptable and for which it is capable of being used."

In separate affidavits Mr. Curtis and Mr. Walther indicated that among the factors they considered in arriving at a fair market value of $18.50 per square foot were: (a) that the five lots were contiguous to each other and that, *as a whole*, they formed a compact area suitable for a use which would occupy the whole of the property; (b) that the lots were under common ownership and subject to leaseholds which had been merged into one holding. The affidavits went on to state that the above factors enabled the subject property, as a whole, to be devoted to a higher and more valuable use than would have been the case if the lots were not contiguous to each other, were not under common ownership, and the leaseholds had not been merged into one holding. The affidavits of both Mr. Curtis and Mr. Walther concluded that it was their opinion that "the use of a square foot value applicable to the entire property, without regard to the specific boundaries of the individual lots, was an appropriate and proper method of expressing the 'true cash value' of the subject property and of the individual lots thereof."

■■■ We agree with defendant that where appraisers have been properly appointed and where their methods have not been limited by the governing leases, appraisers have wide discretion as to their methods of procedure. (*Sebree v. Board of Education* (1912), 254 Ill. 438, 98 N.E. 931.) However, appraisers may not exceed the authority conferred upon them by the lease. (*Union Trust Co. v. Board of Education* (1932), 348 Ill. 256, 180 N.E. 819; *Marceron v. Chevy Chase Services, Inc.* (D.C. Cir. 1958), 258 F.2d 155.) In determining the authority conferred on the appraisers we must look to the five leases. As stated in *South Parkway Building Corp. v. South Center Department Store, Inc.* (1958), 19 Ill. App.2d 14, 25-26, 153 N.E.2d 291, 296:

> "The cardinal rule in the interpretation of a lease is that the court should ascertain and give effect to the intention of the parties, and that in so doing the court may take into consideration the position of the parties, the surrounding circumstances which existed at the time of the execution of the lease, as well as the purpose or object the parties had in mind in entering into the lease * * *."

See also *Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill.App.3d 295, 287 N.E.2d 151.

■■■ In the instant case there is a separate lease for each of the sublots and a specific clause in each of these leases which provides for an appraisal to determine the value of that specific sublot in the event the parties could not agree on the true cash value thereof. Each lease further contains a clause indicating that in determining the value of a particular sublot, the improvements thereon were not to be considered. Moreover, when the sublots were originally leased they were not leased to the same parties. We believe it clear that the intention of the parties at the time the leases were entered into was that the sublots be valued individually and not as a single tract. This requires that each sublot be assessed as a separate parcel and independent of the other sublots. Here the appraisers erred in considering the sublots as a single parcel of land. The affidavits of both Mr. Walther and Mr. Curtis which stated that the "true cash value" of the subject property was determined "without regard to the specific boundaries of the individual lots" is a clear indication that these appraisers considered the sublots as a single parcel of land. Furthermore, Mr. Walther and Mr. Curtis did not assign a specific value to each of the sublots independent of each other, and instead gave a square foot value of $18.50 to the five sublots as a single tract which value was then applied to each of the five sublots. Even if the appraisers felt that the fact that the five lots were contiguous, under common ownership and susceptible to a joint use increased the value of each of the five lots, they should still have valued the five lots individually and independent of each other. These leases clearly called for placing separate value on each of the lots. Thus we affirm the order of the trial court setting aside the appraisal and directing the parties to appoint new appraisers who shall proceed to place a value on each of the five sublots separately.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

MEJDA, P. J., and McNAMARA, J., concur.