**INDIANA FARM BUREAU COOPERATIVE ASSOCIATION, INC., an Indiana corporation, Plaintiff,**

v.

**CHICAGO REGIONAL PORT DISTRICT, an Illinois municipal corporation, Defendant.**

**No. 82 C 3191.**

United States District Court, N.D. Illinois, E.D.

Oct. 25, 1982.

---

272

James M. Breen, Chapman & Cutler, Chicago, Ill., for plaintiff.

William F. Dart, Gen. Counsel, Earl L. Neal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Indiana Farm Bureau Cooperative Association ("IFB") brought this action against the Chicago Regional Port District ("the Port District") for a declaratory judgment that the Port District as lessor unlawfully and unreasonably withheld its consent to the assignment of a lease from IFB to the Louis Dreyfus Corporation ("Dreyfus").[1] This matter is presently before the Court on IFB's motion to limit the issues and IFB's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For reasons set forth below, IFB's motion to limit issues is granted in part and denied in part; IFB's motion for summary judgment is denied.

IFB is a regional agricultural cooperative which counts among its activities the purchase of grain from its local members, and the marketing of grain in domestic and foreign commerce. For these purposes, IFB operates grain elevators. The Port District is a municipal corporation created by the Illinois legislature for the purpose of developing and constructing port and harbor facilities. On June 29, 1955, the Port District and Illinois Grain Corporation ("Illinois Grain") entered into a lease, which provided that Illinois Grain would lease land at Lake Calumet in Chicago, upon which the Port District was to construct a grain elevator. The Port District built the grain elevator, which is known as Gateway Elevator.

Illinois Grain operated Gateway Elevator until 1967. During 1966 and 1967, IFB, Illinois Grain and the Port District negotiated with each other for the assignment of the Gateway Elevator lease to IFB. Illinois Grain had incurred financial losses in the operation of Gateway Elevator, and on July 1, 1967, the lease was assigned to IFB. At that time, the parties amended the 1955 lease agreement to provide for a reduction in the annual rent from $425,000 to $375,000 and a decrease in the schedule of additional rent payments based upon the volume of grain passing through the elevator. IFB also agreed to make $800,000 of improvements to the facilities within fifteen months of the assignment.[2] Claiming that it began to use Gateway Elevator for storage rather than for exporting purposes, IFB sought to assign the Gateway Elevator lease to Dreyfus, subject to the consent of the Port District. IFB sought to sell property which it owned on the leased premises to Dreyfus as well. IFB and the Port District, however, were unable to reach an agreement concerning the assignment of the Gateway Elevator lease to Dreyfus. The Port District denied consent to the proposed assignment on January 14, 1982.

Further attempts to resolve differences between the parties were unsuccessful, and IFB sued the Port District on May 21, 1982, seeking a declaratory judgment that the Port District's refusal of consent to the assignment was unlawful, and that the Port District tortiously interfered with IFB's

---

1. Jurisdiction is based upon 28 U.S.C. § 1332, and the amount in controversy is alleged to exceed $10,000 exclusive of interest and costs.

2. On July 24, 1974, the parties again amended the lease by adding to it 1.89 acres of vacant land adjacent to the Gateway Elevator. IFB subsequently constructed additional storage facilities on the additional acreage.

contract with Dreyfus and unreasonably restrained the alienation of its property. Also sought were preliminary and permanent injunctions restraining the Port District from withholding its consent and interfering with any contract between IFB and Dreyfus.[3] This opinion will consider IFB's motion to limit the issues before turning to its motion for summary judgment.

### Motion to Limit the Issues

IFB has moved to limit the issues in this case to

> those relevant to (1) the construction of the lease and the rights and obligations of the parties under the lease as it relates to consent to assignment, and (2) the legal sufficiency of the Port District's stated reason for refusal to consent to an assignment.

As a result, IFB would preclude the Port District from introducing evidence that the leasing of the Gateway Elevator was a governmental rather than a proprietary act. IFB further argues that the parol evidence rule bars extrinsic evidence concerning the 1967 amendment of the Gateway Elevator lease, and that the Port District, by stating that it could not consent to an assignment of the lease without substantial modification, is estopped from now asserting that Dreyfus is not an acceptable assignee under reasonable commercial standards.

For reasons stated below, this Court grants IFB's motion to limit issues in part and denies the motion in part. The Port District may not introduce evidence in an effort to prove that leasing Gateway Elevator was a governmental act. However, as the subsequent discussion of IFB's motion for summary judgment indicates, the 1967 amendment of the Gateway Elevator lease, as well as the reasons for the Port District's refusal to consent to an assignment to Dreyfus, involve material issues of fact. This Court, therefore, declines to limit the consideration of these issues at trial.

A review of Illinois law indicates that the leasing of Gateway Elevator by the Port District was a proprietary rather than a governmental act. While there is no doubt that the Port District is a municipal corporation, *People ex rel. Gutknecht v. Chicago Regional Port District*, 4 Ill.2d 363, 123 N.E.2d 92 (1954), it is also clear that municipal corporations must abide by their contractual obligations unless their charters provide to the contrary. *Wall v. Chicago Park District*, 378 Ill. 81, 93, 37 N.E.2d 752, 758 (1941). Moreover, the court in *Chanslor-Western Oil v. Metropolitan Sanitary District*, 131 Ill.App.2d 527, 266 N.E.2d 405 (1970), declared that "[a] municipal corporation stands upon the same footing as other corporations in regard to its property. The District's power to lease is proprietary in nature and is not an aspect of its governmental function." *Id.* at 529, 266 N.E.2d at 407 (citation omitted). More recently, the court in *Chemical Petroleum v. Metropolitan Sanitary District*, 81 Ill.App.3d 1005, 37 Ill.Dec. 110, 401 N.E.2d 1203 (1980), reaffirmed the proposition that a municipal corporation's power to lease its property is a proprietary function. *Id.* at 1011, 37 Ill. Dec. at 114, 401 N.E.2d at 1207. As a result, the Port District's argument that the Gateway Elevator lease must be viewed in light of the District's governmental function is unfounded. Since the Port District leased the Gateway Elevator in its proprietary capacity, the Court holds that evidence of the Port District's governmental function shall not be introduced in the course of this action.

### Motion For Summary Judgment

In moving for summary judgment, IFB asserts that the issues in this case are whether the Port District was required as a matter of law to consent to an assignment of the Gateway Elevator lease where refusal of consent would be unreasonable, and whether the Port District's refusal of such consent was unreasonable. IFB further argues that there are no material issues of

---

**3.** On July 2, 1982, this Court granted IFB's motion for a Protective Order in Response to the Port District's request for documents. The Protective Order, however, will only remain in effect until this Court decides IFB's motions for summary judgment and to limit the issues.

fact as to these issues, and that the Port District's refusal to consent was unreasonable as a matter of law. On a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence on the record. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric,* 295 F.2d 573, 576 (7th Cir.1961). Applying these standards to the present case, the Court concludes that there are genuine issues of material fact remaining in this lawsuit.

■■■ IFB has not met its burden of showing that there are no disputed issues of fact concerning the amendment of the Gateway Elevator lease in 1967. The Port District argues that at the time the Gateway Elevator lease was assigned to IFB, the parties intended that any future assignments would be accompanied by negotiations between IFB and the Port District. In response, IFB asserts that the parol evidence rule bars the introduction of extrinsic evidence concerning the 1967 lease amendments and assignment. The parol evidence rule is a substantive matter as to which Illinois law controls in this diversity case. In construing a contract, courts must give effect to the intentions of the parties, *Martindell v. Lake Shore National Bank,* 15 Ill.2d 272, 283, 154 N.E.2d 683, 689 (1958). While some courts have declared that the parol evidence rule prevents the consideration of extrinsic facts concerning the making of a contract where contractual language is unambiguous, *Bard v. Harvey,* 74

Ill.App.3d 16, 19, 29 Ill.Dec. 814, 817, 392 N.E.2d 371, 374 (1979), it is also clear that parol evidence is admissible to assist in determining what the words used in a contract mean, and "[i]f relevant testimony concerning the signing of a contract is offered, it should generally be heard." *Ortman v. Stanray Corp.,* 437 F.2d 231, 234 (7th Cir.1971). *See also URS Corp. v. Ash,* 101 Ill.App.3d 229, 56 Ill.Dec. 749, 427 N.E.2d 1295 (1981).

■■■ Applying these standards to IFB's 1967 Acceptance of the Gateway Elevator lease, it appears that the language in the Acceptance is reasonably susceptible to more than one meaning. The Acceptance provides, *inter alia,* that

[i]n consideration of the above assignment and the written consent of the CHICAGO REGIONAL PORT DISTRICT, a Municipal Corporation, Lessor thereto, the undersigned hereby assumes and agrees to make all payment and to perform and keep all promises, covenants, conditions and amendments of said Lease by the Lessee to be made, kept and performed, and further agrees that no further assignment or any subletting of the premises described in said Lease, or any part thereof, will be made without the written consent of the CHICAGO REGIONAL PORT DISTRICT, Lessor, first had and obtained.

It is possible that in consideration for the various reductions in rental fees and other modifications of the 1955 lease, IFB agreed to renegotiate the terms of the lease in the course of obtaining the Port District's consent to an assignment. The Court is therefore unprepared to decide that there are no ambiguities concerning IFB's Acceptance of the lease, and we hold that the parol evidence rule does not bar extrinsic evidence concerning the 1967 lease amendments and acceptances.[4] Whether the parties intended

---

4. Our conclusion that extrinsic evidence concerning the Gateway Elevator lease, the 1967 amendments to the lease and the acceptances of the assignment should be considered receives further support from a number of Illinois cases. In interpreting leases, the intent of the parties must be given effect, and courts may

consider the position of the parties, the surrounding circumstances at the time of the lease and the purposes of the parties in entering the lease. *Chicago Title & Trust Co. v. Northwestern University,* 36 Ill.App.3d 165, 168, 344 N.E.2d 52, 55 (1976), citing *South Parkway Building Corp. v. South Center Department*

to renegotiate the future assignment of the lease remains a material issue of fact which is not proper for disposal through summary judgment. Questions of intent and motive are particularly inappropriate for resolution on a motion for summary judgment. *Askew v. Bloemker,* 548 F.2d 673, 679 (7th Cir.1976). It would also be inappropriate to grant the plaintiff's motion to limit the issues as to the issue of renegotiation, thus foreclosing the presentation of extrinsic evidence at trial concerning the 1967 lease amendments and acceptances.

 Yet another issue in this case concerns the reasonableness of the Port District's refusal to consent to IFB's assignment of the Gateway lease to Dreyfus. IFB argues that a desire to renegotiate to obtain better economic terms led to the Port District's refusal to consent to the assignment. The Port District has asserted a variety of other reasons for its refusal, including the fact that the assignment might have effected the Port District's obligations to maintain and insure the Gateway Elevator, and that IFB refused to disclose the terms of the proposed assignment and sale to Dreyfus.[5] IFB in turn argues that

the Port District, having stated in its January 14, 1982, letter that it could not consent to an assignment of the lease without renegotiation of its terms, is estopped from asserting any other reasons for its refusal. The arguments of the parties, however, cannot obscure the fact that a material issue of fact remains disputed in this case, that is, whether Dreyfus was a commercially acceptable assignee.[6]

 IFB has not, for purposes of its motion for summary judgment, demonstrated that there are no disputed issues of material fact as to the commercial acceptability of Dreyfus. While it is true that a lessor's withholding of consent to an assignment on the condition of a reappraisal and establishment of a new rent schedule has been held unreasonable and arbitrary, *Chanslor-Western Oil v. Metropolitan Sanitary District,* 131 Ill.App.2d 527, 530, 266 N.E.2d 405, 408 (1970), it is also clear that a lessor need not consent to an assignment for different purposes if doing so would damage the lessor's premises, *Reget v. Dempsey-Tegler & Co.,* 70 Ill.App.2d 32, 38,

---

*Store,* 19 Ill.App.2d 14, 25–26, 153 N.E.2d 291, 296 (1958). Surrounding circumstances may also be examined when the language of a lease is ambiguous. *American National Bank & Trust Co. v. Lembessis,* 116 Ill.App.2d 5, 11, 253 N.E.2d 126, 128 (1969). It is thus clear that the Port District should be given an opportunity to prove its assertion that in 1967, on the date IFB took over the Gateway Elevator lease, the parties to this action contemplated renegotiation of the lease upon any future assignments.

5. Whether the Port District sought disclosure of the terms of the assignment from IFB to Dreyfus is the subject of opposing affidavits submitted by both parties and remains a disputed issue of fact.

6. While it is true that restraints on the alienation of property are generally void, such restraints are valid if designed to attain accepted social goals. *Gale v. York Center Community Cooperative,* 21 Ill.2d 86, 92, 171 N.E.2d 30, 33 (1960). Where a lease forbids any assignment without the consent of the lessor, the lessor may not unreasonably withhold his consent to an assignment. *Jack Frost Sales v. Harris Trust & Savings Bank,* 109 Ill.App.3d 933, 60 Ill.Dec. 703, 433 N.E.2d 941, 949 (1982). *Mowatt v. 1540 Lake Shore Drive Corp.,* 385 F.2d

135, 137 (7th Cir.1967). The burden of proving that a proposed assignee is commercially acceptable is on the lessee, *Reget v. Dempsey-Tegler & Co.,* 70 Ill.App.2d 32, 37, 216 N.E.2d 500, 503 (1966), and the burden of showing that refusal to consent to an assignment was unreasonable is on the party asserting unreasonableness. *Arrington v. Walter E. Heller International Corp.,* 30 Ill.App.3d 631, 640, 333 N.E.2d 50, 58 (1975).

This Court is thus not prepared to conclude that the Port District's letter of January 14, 1982, which explained that consent to the assignment was denied absent modification of the lease, estops the Port District from arguing that Dreyfus is not a commercially acceptable assignee. This estoppel argument overlooks the fact that it is IFB that has the burden of proving the commercial acceptability of Dreyfus. The Port District should have an opportunity to further explain the reasons behind its insistence that the lease be renegotiated, in an effort to show that Dreyfus was not commercially acceptable. We therefore decline to grant IFB's motion to limit the issues insofar as it would prevent consideration of the Port District's other reasons for withholding its consent.

216 N.E.2d 500, 503 (1966), or affect its obligations as a lessor. *See Warmak v. Merchants National Bank of Fort Smith,* 272 Ark. 166, 612 S.W.2d 733, 735 (1981). The Port District has presented an affidavit from a structural engineer which declares that the assignment may increase the Port District's responsibilities. Thus, whether assignment of the Gateway Elevator lease to Dreyfus would affect the Port District's obligations, or damage its premises, is unclear. We are therefore unable to conclude at this time that Dreyfus was a commercially acceptable assignee as a matter of law, or that the Port District's refusal of consent was unreasonable.

Accordingly, IFB's motion to limit issues is granted insofar as it sought to prevent the introduction of evidence concerning the Port District's governmental functions. It is denied in all other respects. IFB's motion for summary judgment is also denied. It is so ordered.