Ed WARMACK *v.* THE MERCHANTS NATIONAL BANK OF FORT SMITH

80-314                                        612 S.W. 2d 733

Supreme Court of Arkansas
Opinion delivered March 16, 1981

*Bethell, Callaway & Robertson*, by: *Edgar E. Bethell*, for appellant.

*Daily, West, Core, Coffman & Canfield*, by: *Thomas A. Daily*, for appellee.

DARRELL HICKMAN, Justice. The questions raised in this appeal concern a lease provision which provides that the tenant cannot sublet the premises without the landlord's permission. The chancellor held that Arkansas law implies that consent to sublet cannot be unreasonably withheld and that the landlord so acted in this case. We disagree and reverse the decree.

The parties are the landlord-owner of the Central Mall, a large shopping complex in Fort Smith, and the tenant-Merchants National Bank of Fort Smith. A detailed and lengthy lease agreement was signed by the parties in 1969. Under this lease the bank would build a drive-in facility on the parking lot of the complex. The complex consisted of a mall with a series of shops interconnected under one roof, and other stores and shops in conventional shopping center configuration. This was the largest such complex in Arkansas at the time it was built.

The lease was for a term of twenty-five years and the

terms of the lease were mutually beneficial. The tenant would build the building in a prime location and get a long term lease with the cost being totally tax deductible. The landlord would get a valuable tenant who would contribute to the success of his complex and after twenty-five years the landlord would own the building.

The lease was negotiated but to what extent we cannot say. The tenant bank apparently made numerous deletions in the printed lease and the landlord agreed to all of these. The provision in question was not changed and was not, to our understanding, the subject of negotiations. The questionable provision reads:

> Tenant shall not sublet the premises in whole or in part and shall not sell, assign, mortgage, pledge or in any manner transfer this lease, or any interest herein, without in each case having obtained Landlord's written consent; . . .

In 1979 the bank merged with the Continental Bank and Trust Company, a local bank with a facility across the highway. It was decided in May or June of 1979 that the bank would move from its facility on the mall to the newly acquired facility across the highway. At the same time, negotiations began with First Federal Savings and Loan Association to sublet the drive-in facility. The landlord was not informed of these proposals until November 16, 1979. At that time he was asked to approve the sublease. (The landlord had some intimation a few days before that the bank would close or abandon the drive-in facility, but he had no official notice before November 16th.)

The landlord said that he would consider the matter and get back to the bank. He subsequently decided to cancel the lease and wrote a letter on December 19th, electing to terminate the lease immediately because the premises had been vacant more than ten days. Two days later the bank filed this suit for declaratory judgment. The landlord counterclaimed to cancel the lease and sought damages under Ark. Stat. Ann. § 34-1516. Monthly payments have been tendered by the bank pending this litigation.

The tenant insisted that despite the language of the lease the landlord could not unreasonably withhold his consent to a sublease and he was doing so. Testimony was given that the new tenant, a savings and loan association, was an identical tenant, the bank would still be liable for the rent and no harm could come to the landlord from the sublease. Indeed, it was argued that the landlord would, if the lease were literally enforced and cancelled, own the building, a substantial gain.

The landlord argued that the lease meant what it said and that consent for any reason could be withheld. Even so, the landlord put on testimony as to why the new tenant was not acceptable. His evidence was that such a shopping complex, to be successful, must contain a good "mix" of tenants; it must have a proper balance. Too many of any kind, such as shoe stores or clothing stores, would be harmful; a complex needs a variety of shops to attract and keep customers. An expert in retail marketing concluded that losing the bank and gaining the savings and loan company would be detrimental. He based his conclusion on two facts: First Federal Savings and Loan already had a facility in the mall and if it operated the drive-in, there would actually be less customers that would come into the mall because some would use only the drive-in facility; a savings and loan company does not draw the same nor as many customers as a bank does.

The tenant countered this testimony by saying that there was essentially no difference between such institutions; that the bank was only moving some five hundred feet across the street; customers would still come to the area; and that the landlord was being unreasonable.

The chancellor held that Arkansas law does not permit a landlord to unreasonably withhold consent and in this case he was unreasonable. He approved the sublease. We agree with the chancellor that such a provision in a lease should not permit a landlord to unreasonably withhold consent. That is the trend of the law and our decision in *Tucker* v. *Pulaski Federal Savings & Loan*, 252 Ark. 849, 481 S.W. 2d 725 (1972) is an indication of that trend. Other states

have adopted that principle of law. *Homa-Goff Interiors, Inc.* v. *Cowden*, 350 So. 2d 1035 (Ala. 1977); *Arrington* v. *Walter E. Heller International Corporations*, 30 Ill. App. 3d 631, 333 N.E. 2d 50 (1975); *Granite Trust Bldg. Corp.* v. *Great Atlantic and Pacific Tea Co.*, 36 F. Supp. 77 (D. Mass. 1940).

In our judgment the best rule concerning such leases is contained in the *Restatement of Property*, § 15.2 (1976) which we adopt as controlling in such cases. The Restatement says:

> A restraint on alienation with the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

In adopting this rule we abandon the principle that a landlord may freely withhold his permission as expressed in *Fort Smith Warehouse Company* v. *Friedman-Howell & Co.*, 111 Ark. 15, 163 S.W. 175 (1914). Even so, we disagree that in this case the decision of the chancellor was supported by a preponderance of the evidence.

The *Restatement of Property, supra*, notes that: "A general statement of what constitutes *unreasonableness* in this area [i.e., a landlord's refusal of consent to a transfer] was given in *Mitchell's* v. *Nelms*, 454 S.W. 2d 809 (Tex. Civ. App. 1970), that being: 'without fair, solid and substantial cause or reason.'" With that understanding of the term, we cannot say the landlord was unreasonable in this case. The chancellor should have ordered the lease cancelled.

The mall complex was no ordinary landlord-tenant arrangement. Each tenant was considered for the contribution made to the whole complex. The evidence indicates that the tenant mix was critical to the mall's success. The landlord leased these premises specifically to be used for a drive-in bank. The substitution offered was a savings and loan association which already had a facility in the mall — a

critical fact. The evidence indicated that it would be decidedly to the landlord's disadvantage to accept this tenant. Essentially nothing would be gained and the success of the complex, to some degree, would suffer. Also, we are convinced that while a savings and loan association is similar in many respects to a bank, and becoming more so, it is not the same institution and will not attract the same customers. We are not impressed with the fact that the bank guaranteed the rent; this is not just a case of security for the rent, as might ordinarily be the case, but it concerns the protection of a major investment by a landlord and the welfare of his other tenants.

We cannot say that the matter of damages claimed by the landlord can be resolved on this record. It seems the landlord was wrong in attempting to treat the building vacant. The chancellor so found. Also, we are not convinced that the landlord is entitled to triple damages under Ark. Stat. Ann. § 34-1516 (Repl. 1962). There must be a finding of willful, wrongful detainer to trigger *Johnson* v. *Taylor*, 220 Ark. 46, 246 S.W. 2d 121 (1952). Strict construction of such a penal statute may preclude such relief. The case is remanded in regard to rent and damages for the chancellor to determine the equities of the parties and enter a decree accordingly.

The decree is reversed and the cause remanded for entry of a decree consistent with this opinion.

Reversed and remanded.