**MEDINVEST COMPANY, Appellant,**

v.

**METHODIST HOSPITAL, f.k.a. Asbury Methodist Hospital, Respondent.**

No. C6–84–674.

Court of Appeals of Minnesota.

Dec. 31, 1984.

Richard C. Johnson, Johnson, Utter & Johnson, Minneapolis, for appellant.

W. Scott Herzog, Dale M. Wagner, Moss & Barnett, Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This appeal is from a judgment declaring that a landlord reasonably withheld consent to a sublease because the proposed sublessee would compete with services already offered in an adjacent and skyway-connected building by the landlord. We affirm.

## FACTS

By a lease dated July 22, 1968, respondent leased to appellant's predecessor in interest land adjacent to respondent's Methodist Hospital in St. Louis Park, Minnesota. The lease provided:

a. For a term of 58 years commencing January 1, 1969, and ending September 31, 2027;

b. For a rent of $1 per year plus the amount of real estate taxes, special assessments, and other taxes and charges assessed or charged against the premises;

c. That the lessee shall construct at its expense a medical office building in accordance with plans and specifications approved by the respondent;

d. That the building shall provide offices primarily for physicians and dentists;

e. That a primary purpose of the building is to provide office space for staff members of the hospital and that the lessee should give priority in leasing space in the building to such staff members;

f. That all tenants in the building shall be subject to the approval of the lessor but that the lessor's approval of such tenants shall not be unreasonably withheld;

g. Upon termination of the lease, the lessee shall deliver the land and building to the lessor free and clear of any mortgages or encumbrances and any claims of the lessee.

Appellant acquired the lessee's interest by assignment on August 17, 1970. The five story building was completed in 1970 or 1971, and is of the same concrete block and brick construction as Methodist Hospital. The two buildings are connected at three levels by skyways.

On January 24, 1983, appellant requested that respondent approve Damon Clinical Laboratories, Inc. (Damon) as a tenant. On January 27, 1983, the respondent refused to approve Damon as a tenant because Damon would compete with laboratory services already offered by respondent in Methodist Hospital.

At trial respondent produced extrinsic evidence supporting the conclusion that a purpose of the lease was to provide tenants who would use respondent's facilities. Appellant countered by arguing that such was not the purpose of the lease and also produced testimony on the probable increase in value of the medical building when the lease expires. Appellant also showed that it paid substantial annual property taxes in countering the argument that the rent charged was nominal.

Appellant argues that refusal to give consent due to general economic reasons is unreasonable per se, the contract clearly and unambiguously did not allow such a withholding of consent, and therefore any extrinsic evidence as to intent was inadmissible.

## ISSUES

1. Is a clause providing that the landlord may not unreasonably withhold consent to a sublease ambiguous, thus rendering extrinsic evidence admissible to resolve the ambiguity?

2. Is a landlord's withholding of consent to a sublease unreasonable when the proposed subtenant's business would compete with respondent's hospital thereby defeating a primary purpose of the lease?

## ANALYSIS

 Giving full effect to the intent of the parties is primary in interpreting a

lease. *Snyder's Drug Stores, Inc. v. Sheehy Properties, Inc.,* 266 N.W.2d 882, 884 (Minn.1978). "Great weight should be given to the intention of the parties regarding the purpose of the lease." *Orme v. Atlas Gas and Oil Co.,* 217 Minn. 27, 30, 13 N.W.2d 757, 760 (1944). It is essential to contractual interpretation to consider the subject matter, purpose and object, and surrounding circumstances of a lease agreement. *Orme,* 217 Minn. at 30, 13 N.W.2d at 760.

### 1. *Extrinsic Evidence on Intent*

Appellant argues that the terms of the lease agreement unambiguously state the reasonable grounds for withholding consent and thus evidence of the parties' intent is inadmissible. However, ambiguity exists in a contract if it is susceptible to more than one construction. *Republic National Life Insurance Co. v. Lorraine Realty Corp.,* 279 N.W.2d 349, 354 (Minn.1979). Where language is ambiguous, courts may resort to extrinsic evidence. *Id.* This rule applies when determining the intention of parties to a lease. *Id., citing, Orme,* 217 Minn. at 30, 13 N.W.2d at 760.

In this case the lease term "unreasonable," when used to qualify the right to refuse a proposed sublessee, is subject to at least two plausible interpretations and is thus ambiguous. "Unreasonable" may mean, as appellant urges, that unless a proposed sublessee would threaten the lessor's security in the property, any refusal is unreasonable. This interpretation arises from the premise that a landlord's normal concern is rent. It is obvious on the face of this lease, however, that the primary purpose is not rent. Respondent receives only nominal rental income from appellant and has no direct interest or concern in a subtenant's ability to pay rent to appellant. Therefore, the meaning of the lease term "unreasonable" is not clear and extrinsic evidence of intent is admissible.

### 2. *Refusal to consent to sublease*

Appellant asserts that the trial court's findings on the purpose of the lease are clearly erroneous. Where, as here, the appellant did not move for amended findings, appellant must show that the record clearly contradicts the trial court's findings. *Leininger v. Anderson,* 255 N.W.2d 22, 26 (Minn.1977).

The trial court found the primary purpose of the lease was to provide office space for physicians on Methodist Hospital's medical staff thus "encouraging the utilization of the hospital and its services by the medical profession." The record shows substantial evidence supporting that finding. Appellant under the lease pays one dollar annually as rent and in return may occupy the building it built on respondent's land for 58 years. The court reasonably found from this evidence that tenants who would utilize the hospital's services would provide an alternative form of remuneration, thus justifying subsidized rent. Other extrinsic evidence supports the trial court's finding including the medical building's construction which makes it appear a part of the hospital, the 10 foot distance between the buildings, and the three skyways connecting the buildings. Accordingly, we conclude that the trial court properly found the primary purpose was to facilitate use of the hospital's facilities.

Appellant next claims that refusal of consent, based on the purpose of the lease as found by the trial court, is a refusal to permit the sublease based on general economic reasons. Appellant claims such refusal is unreasonable as a matter of law, citing *Edelman v. F.W. Woolworth Co.,* 252 Ill.App. 142 (1929). In *Edelman* the court held that a landlord's refusal to consent to a subleasee who would compete with its business was not reasonable under the terms of the lease. The court indicated that the landlord should have specified competition as a basis for withholding consent if it wanted to refuse for that reason. *Id.* at 145. A later decision citing *Edelman* states:

Where the lease contains provisions giving further meaning to the clause granting a person the power to withhold consent, then the standard by which reasonableness is judged is varied accordingly. *Arrington v. Walter E. Heller International Corp.*, 30 Ill.App.3d 631, 641, 333 N.E.2d 50, 58 (1975).

*Edelman* and similar cases cited by appellant differ from this case. In those cases the landlord's purpose in leasing its property was unrelated to its own business. The purpose for those leases was to accumulate rents. Here rent is but a nominal purpose; enhancing respondent's business is the primary purpose. The trial court found that that purpose would be partly defeated by subleasing to Damon.

The only Minnesota case interpreting the term "unreasonable refusal" is *Torgerson-Forstrom H.F. Willmar, Inc. v. Olmsted Federal Savings and Loan Ass'n*, 339 N.W.2d 901 (Minn.1983). In dicta, the supreme court noted that the purpose of an anti-assignment clause is to insure the suitability of a tenant for the protection of the landlord in his ownership and operation of the property. The case also points out that the purpose of the anti-assignment clause is not for the landlord's general economic protection. As in other cases cited by appellant, *Torgerson* does not involve a situation where subleasing to a competitor would totally contradict the primary purpose of the lease. *Torgerson*, thus, gives little guidance in this case.

Where the purpose of the lease is endangered by the proposed sublessee, consent may be reasonably withheld. In *Warmack v. Merchant's National Bank*, 272 Ark. 166, 612 S.W.2d 733 (1981) the court found the owner of a large shopping center reasonably refused to allow its tenant National Bank a sublease to a savings and loan organization because it would cause the owner to suffer economically. The court stated:

> This is not just a case of security for rent, as might ordinarily be the case, but it concerns the protection of a major investment by a landlord and the welfare of his other tenants.

*Id.* at 169, 612 S.W.2d at 735–36. In *Haack v. Great Atlantic & Pacific Tea Co.*, 603 S.W.2d 645 (Mo.Ct.App.1980) and *Jones v. Andy Griffith Products, Inc.*, 241 S.E.2d 140 (N.C.Ct.App.1978), the landlords were to receive a percentage of the tenants' sales as rent. In both cases, the courts upheld the landlord's right to reject proposed subtenants where the subtenants were unlikely to generate sufficient sales. These cases establish that when a proposed subtenancy would defeat a specific and primary purpose for a lease, albeit economic, the landlord may withhold consent.

## DECISION

Since the primary purpose of the lease agreement would be defeated by allowing Damon Clinical Laboratories to sublet office space in the medical building, respondent reasonably refused to consent to the sublease.

Affirmed.