# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2734

_____

Zelda Walls, Individually, and as surviving spouse of Arlie Walls

*Plaintiff - Appellant*

v.

Petrohawk Properties, LP; Exxon Mobil Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 23, 2015
Filed: December 28, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Zelda Walls, individually and as surviving spouse of Arlie Walls, appeals the district court's[1] grant of partial summary judgment as to the material breach claims in favor of Petrohawk Properties, LP. Walls also appeals the district court's later

---

[1]The Honorable James M. Moody Jr., United States District Court for the Eastern District of Arkansas.

judgment that held Petrohawk did not owe Walls additional royalties dating from a previous Lessee's tenure and was not subject to the penalty under Arkansas Code Annotated § 15-74-602. We affirm.

## I. *Background*

Zelda Walls and her now-deceased husband, Arlie Walls, entered into an oil and gas lease with Griffith Land Services in August 2005. Under the lease, Walls was to receive bonus payments and royalties (3/16ths gross) based upon the production and marketing of oil and gas from the property. The lease contained an assignment provision stating that "Lessee shall obtain written consent from Lessor before assigning lease to a third party which consent shall not be unreasonably withheld."

Subsequently, Griffith assigned the lease to Alta Resources, LLC; Alta assigned the lease to Petrohawk Properties, LP; thereafter, Petrohawk assigned the lease to Exxon Mobil. All of these assignments occurred without Walls's written consent.

Throughout the lease assignments, the lessees failed to pay Walls the full royalties due under the lease. In May 2010, Walls's attorney sent Petrohawk—the lessee at the time—a letter seeking collection of the prescribed royalty payments plus statutory interest. In the letter, the attorney stated it was his understanding that although Walls had initially leased with Griffith, the leases were currently assigned to Petrohawk. The letter requested that Petrohawk look into the matter and compensate Walls accordingly.

Petrohawk conducted an internal audit and determined that Walls indeed had not received the proper amount of royalty payments. In October 2010, Petrohawk paid Walls more than $200,000 in additional royalties, which Walls received and cashed.

At the beginning of December 2010, Petrohawk sought Walls's consent to assign the lease to Exxon. Petrohawk sent Walls a letter seeking consent to assign the lease, but no consent was given. Instead, counsel for Walls responded in a letter on December 15th, noting that a proper legal description of the land was missing, asserting that previous assignments constituted breaches of the lease, and asking for "detailed information as to why it would be in the best interest of Mrs. Walls to agree to the assignment." The next day, on December 16th, Walls filed suit against Petrohawk claiming material breach of the lease based upon miscalculation of the royalties and failure to obtain consent for the assignment to Exxon. Petrohawk did not respond to Walls's December 15th letter and on December 27th assigned the lease to Exxon.

Walls's complaint alleged that Petrohawk owed her additional compensation based on its status and Alta's prior status as assignees of the lease. Also, Walls contended Petrohawk is subject to a statutory penalty of 14% per annum. Petrohawk stipulated to the additional amount owed under its assignment but disputed liability for the amount owed by Alta, the prior assignee. Petrohawk further denied it was subject to the statutory penalty.

Petrohawk moved for partial summary judgment on the two claims of material breach. The district court granted the motion, finding that the failure to pay royalties did not constitute a material breach because any technical breach by Petrohawk was cured when Petrohawk paid Walls for the past, miscalculated royalties. The court also found that Walls waived any breach by accepting payment from Petrohawk. With respect to Walls's claim that the assignments constituted a material breach, the court held that Walls waived the breaches prior to Petrohawk's assignment to Exxon. Finally, the court found the assignment by Petrohawk to Exxon was not a material breach because Walls unreasonably withheld her consent.

Following the order granting partial summary judgment, Petrohawk stipulated to the additional compensation owed under its assignment. The court still had to decide whether Petrohawk was liable for Alta's unpaid royalty debt and the statutory penalty. The court found that Petrohawk was not liable for the nonpayment of royalties that occurred under Alta's tenure as assignee. As to the statutory penalty, the court found that Walls not only failed to give Petrohawk notice as required by the statute, but she also failed to show that Petrohawk willfully or in bad faith withheld payment as the statute required.

## II. *Discussion*

On appeal, Walls argues that the district court erred by (1) granting summary judgment in favor of Petrohawk on Walls's claims of material breach for nonpayment of royalties and failure to obtain consent, (2) finding Petrohawk not liable for Alta's breaches under the lease, and (3) concluding Walls was not entitled to the statutory penalty under Arkansas Code Annotated § 15-74-602.

We review a district court's grant of summary judgment de novo. *Oxy USA, Inc. v. Hartford Ins. Grp.*, 58 F.3d 380, 381 (8th Cir. 1995) (citation omitted). Summary judgment involves the "threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Summary judgment is not appropriate if the nonmoving party can set forth specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005). Factual disputes alone are insufficient to bar summary judgment; "rather, the dispute must be outcome determinative under prevailing law." *Id*. Although the materiality of a breach is generally a question of fact, summary judgment is appropriate where no reasonable fact finder could find that the breach was material. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 921 (8th Cir. 2013) (upholding summary judgment because the breach was not material).

-4-

## A. *Failure to Pay Royalties*

Walls first argues that Petrohawk's failure to pay royalties timely under the lease constituted a material breach, which would provide a basis for cancellation of the lease. Under Arkansas law, a breach is "material" where there "is a failure to perform an essential term or condition that substantially defeats the purpose of the contract for the other party." *Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 320 S.W.3d 1, 7 (Ark. Ct. App. 2009) (citation omitted). Arkansas courts have generally not considered nonpayment of royalties a material breach. *See, e.g., Schaffer v. Tenneco Oil Co.*, 647 S.W.2d 446 (Ark. 1983) (refusing to cancel lease even though lessee failed to make royalty payments for five years).

In *Schaffer*, the Supreme Court of Arkansas noted that "Louisiana is the only jurisdiction that has consistently been willing to decree cancellation for a lessee's unexcused failure to pay pursuant to an oil and gas lease." *Id*. at 447. Arkansas, on the other hand, has determined that "[w]here there is no cessation of marketing of oil and gas for a substantial period but only the nonpayment of royalties, the lessors generally have a plain, speedy, and adequate remedy at law for damages." *Id*. (citation omitted). Applying *Schaffer*, Walls's remedy for nonpayment of royalties is legal not equitable. Unquestionably, Petrohawk failed to pay the royalties owed to Walls; however, that failure did not substantially defeat the purpose of the contract. Understandably, payment for the extracted minerals is important to Walls. But the payment is secondary to the extraction, development, and marketing of minerals on Walls's property. Throughout the period of the lease, Petrohawk continued to extract, develop, and market the minerals from Walls's land. Given that the Supreme Court of Arkansas did not consider five years of royalty nonpayments a material breach, *see id.*, we decline to conclude that the instant facts constitute a material breach.[2]

---

[2]Even were we to consider Petrohawk's breach material, Walls waived the breach by accepting the $200,000 payment from Petrohawk and continuing with the lease. Arkansas law considers it "elemental that one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the

## B. *Failure to Obtain Consent to Assign*

Walls also argues the lease should be canceled because it was materially breached by the various assignments that were executed without her consent. Here, too, Walls waived the breaches with respect to all of the assignments except the Petrohawk-Exxon assignment. In a letter dated May 21, 2010, Walls's attorney stated, "Arlie Walls and Zelda Walls initially leased with Griffith Land Services, Inc. and it is my understanding that those leases have been assigned to Petrohawk. Mrs. Walls has retained our firm to assist her in collecting the proper amount of royalties on these leases." By writing the letter and taking payment from Petrohawk, Walls waived any breaches resulting from assignments up to that point. *See Clear Creek*, 255 S.W. at 8 (holding that "one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach" (citations omitted)).

There remains, however, the assignment from Petrohawk to Exxon. This assignment was executed without receiving Walls's consent and took place after the May 21 letter was sent and after Walls accepted payment. Petrohawk argues this assignment was not prohibited because Walls unreasonably withheld her consent. The lease permitted assignments if written consent were obtained, which would "not be unreasonably withheld." In *Warmack v. Merchants National Bank of Fort Smith*, 612 S.W.2d 733, 735 (Ark. 1981), the Supreme Court of Arkansas expressly adopted § 15.2 of the Restatement (Second) of Property, which states:

---

contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach." *Clear Creek Oil & Gas Co. v. Brunk*, 255 S.W. 7, 8 (Ark. 1923) (citation omitted). Walls cannot now insist on the breach after she has accepted payment by Petrohawk. Walls has waived any breach by Petrohawk.

A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

Restatement (Second) of Property: Land. & Ten. § 15.2 (1977). In *Warmack*, the court explained that "unreasonable" is a term of art meaning "without fair, solid and substantial cause or reason." *Warmack*, 612 S.W.2d at 735 (quotation and citation omitted). Here, Walls's letter to Petrohawk did not give a "fair, solid and substantial cause or reason" for not consenting to the assignment. Instead, Walls asked why it was in her best interests to consent. Then, before waiting to receive a response from Petrohawk, Walls filed suit against Petrohawk the very next day. We find no error in the district court's conclusion that Walls unreasonably withheld consent.

## C. *Alta's Breaches*

Walls next argues that the lease holds Petrohawk liable for breaches of previous assignees, specifically Alta. The lease requires that "[a]ll obligations of Lease shall be binding upon assignee." Further, an assignor is only "relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment." Unless otherwise contracted, "successive assignees are only liable for the breaches of covenants of the lease that occur during their period of tenure." 3 Summers Oil & Gas Law § 29:7 (3d ed. 2008).

The language of the lease does not support Walls's argument. The lease relieved Alta of obligations arising subsequent to the date of assignment. Any obligations arising before the date of assignment remained with Alta. The unpaid royalties from Alta's tenure constitute an "obligation" that arose prior, not subsequent, to the date of assignment. *See* Black's Law Dictionary 1104 (8th ed. 2004) (defining "obligation" as "a formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp.,

a duty arising by contract"). Petrohawk is only liable for obligations arising subsequent to the date of assignment, and it is not liable for Alta's nonpayment of royalties.

## D. *Statutory Penalty*

Finally, Walls argues that Petrohawk is subject to the statutory penalty provided under Arkansas Code Annotated § 15-74-602. If payments are willfully withheld

> without just cause or through bad faith from persons legally entitled to the proceeds from production, the court may award, . . . a penalty in an amount not to exceed simple interest at a rate of fourteen percent (14%) per annum on the amount of the unpaid proceeds . . . and a reasonable attorney's fee.

Ark. Code Ann. § 15-74-602(a). Walls further argues that the notice required in § 15-74-603(b) only requires notice of intent to seek payment of oil or gas proceeds, but it does not require notice of the intent to seek the statutory penalty. Thus, Walls asserts the district court should have permitted a jury to determine whether Petrohawk willfully withheld payments without just cause or in bad faith.

Although we review a trial court's interpretation of a statute de novo, *Myers v. Raynor* (*In re Raynor*), 617 F.3d 1065, 1069 (8th Cir. 2010), a trial court's decision whether to award statutory penalties "will not be reversed on appeal unless the trial court's decision is clearly erroneous." *McHalffey v. Nationwide Mutual Fire Ins. Co.*, 61 S.W.3d 231, 233 (Ark. Ct. App. 2001).

The statutory notice provision provides,

> (b) If persons legally entitled to the proceeds seek relief for the failure of the purchaser to make timely payment of proceeds from the sale of oil

or gas or interest thereon as required in §§ 15-74-601 and 15-74-602, the first purchaser or the owner of the right to produce under an oil or gas lease or force pooling order shall be furnished with written notice of the failure as a prerequisite to commencing judicial action for the nonpayment.

Ark. Code Ann. § 15-74-603(b). When considered in isolation, paragraph (b) could be read to support Walls's argument. However, when paragraphs (c) and (d) are considered in conjunction with (b), it becomes evident that written notice of the intent to seek the statutory penalty is a prerequisite to commencing judicial action. Paragraph (c) states that "[t]he first purchaser shall have thirty (30) days after receipt of the required notice within which to pay proceeds or to respond in writing with a reasonable basis for nonpayment." *Id*. § 15-74-603(c). A reasonable basis for nonpayment is required because the statutory penalty applies if payments are willfully withheld "without just cause or through bad faith." *Id*. § 15-74-602(a). Then, paragraph (d) states that the statutory penalty provision of § 15-74-602(a) shall not apply "[i]f the court is satisfied that payments have not been willfully withheld without just cause or through bad faith." *Id*. § 15-74-603(d). Written notice triggers the statutory duty to pay or explain nonpayment. When written notice is furnished to the nonpaying party, the nonpaying party has an opportunity to explain its basis for nonpayment. If the nonpaying party provides a reasonable basis—a basis that satisfies the court that payments were not willfully withheld without just cause or through bad faith—the statutory penalty provision will not apply.

The district court found that Walls failed to make factual allegations of Petrohawk's willfulness or bad faith. We agree. Assuming Walls had furnished Petrohawk with the requisite notice, Walls still failed to plead any facts that would support a finding that Petrohawk willfully withheld payments without just cause or

in bad faith. The district court's finding was not clearly erroneous. Walls is not entitled to the penalty provided by § 15-74-602.[3]

III. *Conclusion*

Accordingly, we affirm the decision of the district court.

_____

_____

[3]We find it unnecessary to address Petrohawk's argument that Walls failed to adequately plead special damages as required by Rule 9(g) of the Federal Rules of Civil Procedure because we decide the case based on the text of the statute.